George W. **PRESTON** et al.,
Plaintiffs-Appellants,

v.

John E. **MANDEVILLE**, etc., et al.,
Defendants-Appellees.

No. 72–1881.

United States Court of Appeals,
Fifth Circuit.

May 25, 1973.

Morris Brown, Atlanta, Ga., A. J. Cooper, Jr., Mobile, Ala., Neil Bradley, Atlanta, Ga., Orzell Billingsley, Jr., Birmingham, Ala., Emily Carssow, Atlanta, Ga., James K. Baker, Birmingham, Ala., Charles Morgan, Jr., Atlanta, Ga., Melvin L. Wulf, New York City, George W. Dean, Jr., Destin, Fla., Howard A. Mandell, Montgomery, Ala., Norman Siegel, Atlanta, Ga., for plaintiffs-appellants.

William J. Baxley, Atty. Gen., Charles R. Butler, Jr., Dist. Atty., Mobile, Ala., Leslie Hall, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before GODBOLD, DYER and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

The initial history of this case appears in the opinion on a prior appeal, Preston v. Mandeville, 428 F.2d 1392 (5th Cir. 1970). Negro plaintiffs had claimed racial discrimination in compiling and maintaining the Mobile County jury roll. The District Court had found that the overall population of persons of jury age was 70.7% whites—29.3% blacks, while the .jury roll was 84% whites—16% blacks, and had considered this statistical disparity to be insufficient to prove the charge of racial discrimination. The Court of Appeals reversed, holding that the disparity, considered in the light of the process then in use in Mobile for selecting names for the jury roll, was sufficient to establish a prima facie case of discrimination, which required the jury commissioners to come forward with valid explanations for the disparity, and that they had failed to do so. Thus we reversed the judgment of the District Court and remanded the case for further proceedings, gave the commissioners an opportunity to come forward with clear and convincing evidence of the racial makeup of the jury roll, and directed the District Court to grant appropriate relief if there was racial discrimination in the composition or maintenance of the master roll. 428 F.2d at 1395.

■ Additional hearings were conducted by the District Court. They revealed that the percentage of blacks on the roll had been increased to approximately 26% to 27% [1] against a current percentage of blacks in the overall jury age population of 28%. The increase in percentage of blacks on the jury roll was not accidental. It had been purposefully achieved by the efforts of the jury commission, chiefly by the clerk. Blacks had been selected for addition to the jury roll in a manner which arbitrarily excluded from consideration identifiable

groups of the Negro population of the county. Stating it simply, the commissioners selected substantially all blacks to be added to the roll from one concentrated area in the City of Mobile and arbitrarily excluded from consideration substantially all blacks residing elsewhere in the county. To obtain names of additional blacks in the quickest, most convenient and least costly way, the clerk secured substantially all of them from the Toulmonville area of the City of Mobile, a predominantly Negro section. The practical consequence was that substantially all Negro citizens residing in other heavily black areas of the county, such as Prichard and Whistler, were treated as ineligible for addition to the roll. Prichard is more than 50% black, and, with a population, according to the 1970 census, of 41,578, is the second largest municipality in Mobile County. This manner of securing the increase cannot stand.

The issue before us is not whether a jury roll *vel non* must bear some acceptable statistical relationship to the varying demography of the entire geographical area from which it is drawn. Rather the issue is whether "appropriate relief" was granted on remand when it appeared that the jury commission, in remedying prior discrimination under an order of this court, excluded substantial geographical areas from consideration as sources of jurors for no valid reason.[2]

The effort of the commission to bring the jury roll up to constitutional minimums was largely conducted by the clerk. It is not claimed that her concentration upon Toulmonville was done with a bad heart. Rather it appears that there were insufficient funds, resources and personnel available to her. Most of the names of new jurors, black and white, were secured through the following procedure. From sources such as city directories, telephone books, tax

---

1. According to defendants' non-expert witness, based on a non-expert sampling of the roll, 25.84%. According to plaintiffs' expert witness, based on a more scientific sampling method, 26.9%.

2. *See generally* Ford v. White, 430 F.2d 951, 955 (5th Cir. 1970), discussion of female representation. *See also* Ballard v. United States, 329 U.S. 187, 193–195, 67 S.Ct. 261, 91 L.Ed. 181, 185–186 (1946).

records, automobile tag licenses, and voter registration lists,[3] the clerk would obtain names by selecting, for example, a hundred a's, or a hundred c's. She would select at random from the names so obtained approximately 500 names and send to these a form. Each such block of 500 she referred to as a "mailing." The jury commissioners went through the responses to each "mailing" and added to the jury roll the names of "qualified" persons who ·had responded.

Mailing to Toulmonville was easier than to other areas with high percentages of black residents. The clerk was more familiar with that area, the percentage of replies was higher, and it was easier to work with the applicable zip codes. There was neither time nor funds to mail to other areas, the clerk explained. No mailings were made to Prichard. The clerk stated she had only an old city directory for that city, had been unable to get a new one, and had not had time to use the old one. No effort was made to reach predominantly black rural areas. The clerk had not been able to visit the various precincts as required by Alabama laws,[4] because no funds were provided for that purpose.

> The selection procedures [for the jury roll] are not validated by the fact * * * that funds are not provided for the commission to operate in the manner directed by the state statutes and required by constitutional standards.

Bokulich v. Jury Commission of Greene Cty., Ala., 298 F.Supp. 181, 192 (N.D.Ala.1968) (3 judges), aff'd, 394 U.S. 97, 89 S.Ct. 767, 22 L.Ed.2d 109 (1969), and aff'd sub nom. Carter v. Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970).

In carrying out the order of this court calling for appropriate relief from prior discrimination, the jury commission could not, for reasons such as existed in this case, exclude all black areas other than Toulmonville any more than it could, for like reasons, require that all persons on the jury roll come from the City of Mobile, or a particular area of the city, or from Prichard, or some other specified geographical or demographic area within the county.

While not a basis for our decision, since the issue before us concerns compliance with the mandate of this court and not compliance with provisions of state law, it is nevertheless appropriate to note that the methods used by the jury commissioners to prepare and maintain the Mobile County roll do not comply with the methods prescribed by the Alabama legislature.

> The purpose of the Alabama system is to insure that the jury roll is a cross-section of the community. Compliance with selection procedures set by a state legislature does not necessarily meet constitutional standards. But if a jury selection system as provided by the Alabama statutes is fairly and efficiently administered, without discrimination and in substantial compliance with the state statutes—which the state courts of Alabama already require—the odds are very high that it will produce a constitutional result of a jury fairly representative of the community. Failure to comply with state procedures does not necessarily produce an unconstitutional exclusion. But the fact of, and the extent of, the failure in this case to comply with the procedures and the results contemplated by the Alabama system is strong evidence of unconstitutionality.

Bokulich v. Jury Commission of Greene Cty., Ala., *supra* at 192.

> Alabama is among the most enlightened of the states in requiring that broadly inclusive community lists be consulted and that all eligible persons be shown on the [jury] rolls.

*Id.*

Each Alabama jury commission is charged by the Alabama legislature with the duty of preparing a jury roll containing the name of every citizen living

---

3. Alabama law requires use of such sources. Tit. 30, § 24, Code of Ala. (1958).

4. *Id.*

in the county who possesses the prescribed qualifications and is not exempted by law from jury service. Tit. 30, §§ 20, 21 and 24, Code of Ala. (1958 and Supp. 1971). While recognizing that literal compliance with the word "every" is impossible, the Supreme Court of Alabama, along with the federal courts, has insisted that substantial compliance is necessary and has condemned the intentional omission from the jury roll of substantial numbers of qualified citizens.

> When it affirmatively appears that the names of a large number of citizens who possess the qualifications required by law of jurors, are intentionally omitted from the jury roll * * * that is a fraud in law that requires the quashing of a venire * * *. It is not the kind of a jury box contemplated by law. Our Statutes do not contemplate * * * any system or scheme of selecting other than the selection of names authorized by law * * *.

State ex rel Gregg v. Maples, 286 Ala. 274, 239 So.2d 198, 203 (1970), quoting from Inter-Ocean Casualty Co. v. Banks, 32 Ala.App. 225, 23 So.2d 874 (Ala.App. 1945).

> [S]ubstantial compliance with these legislative safeguards established to protect litigants and to insure a fair trial by an impartial jury is necessary in order to safeguard the administration of justice.

Id. at 202, quoting from Bokulich, which in turn, on this point, had relied upon the decision of the Alabama Court of Appeals in Inter-Ocean, supra. The statutory system, while to some extent discretionary, is "a system of selection which the legislature has specifically provided and with which the jury commission must substantially comply." Id.

The legislatively-prescribed starting point for constituting a jury roll is a provision that the clerk, under the direction of the jury commission, shall "obtain the name of every citizen of the county over twenty-one and under six-ty-five years of age and their occupation, place of residence and place of business." Tit. 30, § 18 (Supp.1971). The qualifications for jurors provided by Tit. 30, § 21 (Supp. 1971), and the exemptions, are applied to the names on the overall list, producing a jury list composed of every citizen qualified and not exempted. Mobile County does not purport to have the overall list of potentially eligible jurors described in § 18. Instead, its jury commission, like the Greene County Jury Commission in Bokulich, appears to take the existent roll and to add names to it and remove names from it. This approach is the reverse of that contemplated by the state statutes.

Also, under the Alabama statutes the jury roll must be kept by precincts, Tit. 30, § 20 (Supp.1971), which would tend to lay bare the sort of geographical exclusion that occurred in this instance. The county of Mobile does not comply with that requirement.

So that we not be misunderstood, we reiterate. The issue for this court is whether the District Court granted appropriate relief in approving an amended jury list which had been supplemented with names of additional blacks obtained in the manner which we have described. The issue is not whether there has been compliance with state statutory procedures. Nevertheless we have observed that, while state procedures will not necessarily produce a jury roll meeting constitutional standards, and failure to follow state procedures will not necessarily result in an unconstitutional jury roll, an enlightened state procedure, fairly and efficiently administered, will tend to bring about a constitutional result.

The conclusion of the District Court that the jury roll is validly compiled must be reversed. In order that the case not be enmeshed in further procedural entanglements the District Court should fix a reasonable time limit within which appropriate relief, as directed by our prior mandate, is brought about. It should issue such orders as may be nec-

essary to implement the work of the jury commission if it lacks the funds, personnel and resources to comply. The commission must serve upon plaintiffs copies of reports, lists of names and other information filed by the commission with the District Court.

Reversed and remanded with directions.