Robbery; sentence: ten years.
On the night of August 14, 1974, a lone bandit entered the Snak Shack in Bessemer. He brandished a pistol, demanded money and received $168.00. He then fled. Witnesses to the incident included the owner-manager, Howard Kelley, and two adolescent employees, Don Talley and Jeffery Kelley. The appellant presents three issues for review, all of which revolve around the witnesses' ability to identify the appellant as the bandit.
According to the initial composite description given by the witnesses, the bandit exhibited the following characteristics. He was a black male, weighing approximately 150 lbs., six feet, one inch to six feet, two inches in height, with medium hair and a short mustache. He wore black pants, a black turtleneck and a flat black hat. After the initial police interview, the witnesses tentatively concluded that the bandit had been in the store earlier that day at which time he allegedly wore a red sleeveless shirt.
All three witnesses identified the appellant from a photographic display on the day following the robbery. They also identified the appellant a short time later at a lineup. All three witnesses positively and unequivocally identified the appellant at trial as the bandit. The appellant vigorously contends that all of the identifications were based on his trip to the Snak Shack in the capacity of a shopper and that he was not the bandit.
During the robbery, the bandit's face was covered except for a few brief occasions when his turtleneck, which he used as a mask, slipped down. A search was made of the appellant's home, no money was recovered, and no fingerprints of the appellant were found at the scene of the robbery. The appellant put on an alibi defense. He also attacked the witnesses' identification by pointing to minor inconsistencies in their respective recollections as to the bandit's appearance at the time of the robbery. The most notable inconsistencies were on the subject of height and the presence of or lack of sideburns.
When evaluating the likelihood of misidentification, whether in-court or out-of-court, there are certain factors which must be considered. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972). The factors include the opportunity of witnesses to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witnesses at the confrontation, and the length of time between the confrontation and the crime. *Page 599 
Following is a list of each witnesses' opportunity to view the bandit at the time of the robbery:
(1) The bandit entered the store and then pulled the turtleneck over his mouth and nose. Jeffery Kelley observed the bandit's entrance and had a clear view of his face.
(2) The bandit walked over to Howard Kelley and put a gun to Mr. Kelley's head. He then demanded a pistol which was located in Mr. Kelley's back pocket. When the bandit reached for the pistol, the turtleneck slipped from his face. Mr. Kelley had a clear view of the bandit's face at arm's length.
(3) The bandit then walked over to Don Talley, put a gun to Talley's side and demanded money from the cash register. When the bandit reached for the money, the turtleneck again slipped from his face. Don Talley also had a clear view of the bandit's face at arm's length.
(4) Jeffery Kelley also viewed the bandit's face when the bandit took Howard Kelley's gun and when the bandit fled the premises.
All three witnesses testified that their opportunity to view the bandit's face was limited to a matter of seconds. All of the other factors mentioned in Neil v. Biggers, supra, are highly favorable to the State in the present case.
 I
The pretrial identification is objected to by the appellant. There were eight photographs from which to choose, and the appellant's picture appeared twice. The appellant contends that such a procedure was highly suggestive.
We have viewed the eight photographs in question. The two photographs of the appellant are very dissimilar. The difference in the appellant's wearing apparel and the lighting used in the photographs is great. In addition there was a substantial difference in the amount of facial hair worn by the appellant in the two photographs. Two of the subjects of the other six photographs were brothers of the appellant. The three brothers looked very much alike. The final four photographs were of black males with facial features similar to the appellant's. They were also of approximately the same age and complexion as the appellant.
All three witnesses selected both photographs of the appellant as being the same man who robbed the Snak Shack. Don Talley and Jeffery Kelley were positive as to both of the appellant's photographs, while Howard Kelley was positive as to one photograph and fairly certain as to the other. The selections made by the witnesses are impressive indeed when one considers that all eight photographs were of men who looked very much alike.
The first step when dealing with an alleged misidentification is to determine if the procedure used was suggestive. Neil v.Biggers, supra. Ordinarily a photographic display which contained eight pictures with the defendant's picture appearing twice might be alleged to be suggestive. But due to the peculiar makeup of the display in question, as discussed above, we hold that the procedure was fair and not in the least suggestive.
 II
The pretrial lineup identification is also objected to as being suggestive. The lineup was composed of four persons. The appellant was from two to four inches taller than the other participants, and he was also the only participant wearing a red sleeveless shirt. The lineup was conducted shortly after the appellant had been identified from the photographs.
The procedure used in regard to the lineup was not as ideal as that used in the photographic display. It must be borne in mind that there was an initial conflict between the witnesses as to the bandit's height. Howard Kelley stated to the investigating officers that the bandit was five feet, eight inches or five feet, ten inches. Arguably, the police were not in error because the other participants in the lineup happened to be shorter than the appellant. However, it could be argued that the lineup *Page 600 
was suggestive by virtue of the fact that the appellant was the only participant to wear a red sleeveless shirt.
 A.
Once it is determined that a pretrial identification process was suggestive, then its effect on the in-court identification must be gauged. The test is set forth in Simmons v. UnitedStates, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) as follows:
 ". . . we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ."
The test of Simmons may be applied to a pretrial lineup as well.
As pointed out in Simmons, the danger that a procedure will produce a misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the potential for error.
The appellant's counsel attempted to show that there was a great likelihood that the appellant had been identified on the basis of his earlier shopping trip to the Snak Shack. The State's eyewitnesses were adamant and unequivocal in their belief that all of the identifications were based on their observation of the bandit. The jury chose to believe that Howard Kelley, Don Talley and Jeffery Kelley based their identifications of the appellant on his trip to the Snak Shack in the capacity of a robber and not of a shopper.
If there was a danger of misidentification in this case, it did not grow out of the lineup. The witnesses had the image of the appellant firmly planted in their minds prior to the lineup. Shortly before the lineup, they had selected the appellant's photograph out of a complicated photographic display.
 B.
The appellant also contends that the results of the out-of-court identifications should have been excluded at trial. The test for admissibility of testimony concerning an out-of-court identification is similar to the Simmons test regarding in-court identification. Under the test for out-of-court identification which is set out in Neil v.Biggers, supra, there must be a very substantial likelihood of misidentification. Floyd v. State, 56 Ala. App. 657,324 So.2d 798 (1975). The only difference between the Simmons test and that set forth in Neil v. Biggers is the deletion of the wordirreparable.
The photographic display was, as previously stated, not suggestive. While the lineup may have been somewhat suggestive and of less probative value than the photographic display, admission of testimony concerning it did not lead to a likelihood of misidentification. The suggestiveness of the lineup would only go to its weight in this case. The in-court identification and the pretrial photographic identification presented overwhelming evidence as to the bandit's identity.
An illustration of a lineup identification which violates due process is provided by Foster v. California, 394 U.S. 440,89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The facts in Foster are so inapposite to those in the present case that they require no discussion here.
 III
The appellant was arraigned on December 30, 1974. His attorney filed a motion on January 31, 1975, to suppress the out-of-court identifications. The trial commenced on November 17, 1975, at which time the trial judge ruled that the appellant could not have a hearing on his motion prior to trial. The trial judge stated, "We are going to proceed with the testimony in this trial and if I find the identification of the defendant is illegal, I will rule it out. I will hear the Motion at the same time of the trial." The appellant contends that the trial judge erred in that ruling. *Page 601 
The appellant contends that the subsequent proceedings that were conducted outside the presence of the jury were a hodgepodge of events that could not suffice to replace the pretrial hearing to which the appellant was entitled. We do not agree.
The appellant was not deprived of his right to have the question of the admissibility of the out-of-court identifications determined outside the presence of the jury.Davis v. State, 46 Ala. App. 45, 287 So.2d 635 (1969), affirmed286 Ala. 117, 237 So.2d 640 (1970); Brown v. State, 277 Ala. 108, 167 So.2d 291 (1964). While the better and more efficient procedure may be to hold a pretrial hearing on motions to suppress, we find no prejudicial effect upon the appellant so long as the matter is heard outside the presence of the jury.
AFFIRMED.
TYSON, HARRIS and DeCARLO, JJ., and BOWEN W. SIMMONS, Supernumerary Circuit Judge, concur.
CATES, P.J., not sitting.