[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 224 
Robbery; sentence: fifteen years imprisonment.
Around 9:20 P.M. on April 25, 1975, the Majik Market convenience store in the East Lake section of Birmingham was robbed. Deborah Lynn Hutchins, the cashier, was held at gunpoint and a total of $170 was taken from the cash register. The robber fled the scene, and police were unable to find him in the vicinity that night. The appellant was arrested on May 3, 1975, on a charge of possessing a sawed-off shotgun and was charged later that day with the robbery in question.
 I
Appellant contends that his arrest, the search, and the seizure of the sawed-off shotgun were not supported by probable cause and therefore were unconstitutional.
On May 3, 1975, Birmingham Police Sergeant John R. Davis received a police radio dispatch to investigate a disturbance at a residence in the East Lake section. He arrived and interviewed Vanessa Ikner, the appellant's girl friend, who had telephoned the complaint to police headquarters. Davis testified to essentially the same facts on voir dire examination outside the presence of the jury and on three separate occasions in the presence of the jury during trial. He stated: "She told me that her boy friend had been down there waving a gun in her face and threatening her with it, and that he had walked off up the street." He said that Ikner told him the appellant had a sawed-off shotgun and gave him a description of the appellant and the direction in which he was headed when he left.
Officer Peggy Dawn Lyle had arrived in another patrol car, and the two officers left in separate cars in the direction that appellant had taken. Within less than a minute, they observed the appellant walking down the street. Sergeant Davis stated that he got out of his car, approached the appellant with his revolver in hand, made a pat-down search, and found a sawed-off .410 gauge shotgun under the appellant's coat. He placed the appellant in Officer Lyle's car, and the two officers took him to the East Lake precinct where he was booked for possession of a sawed-off shotgun. In route, the appellant was read the Miranda warning.
After the appellant's description was compared with that given of the robbery suspect, he was also charged with robbery and transferred to the city jail.
In order to disprove the existence of probable cause, the appellant called Vanessa Ikner to testify outside the presence of the jury. She stated that she had telephoned the police and asked that they send someone out because she and her boy friend had had a fight. She said that she could *Page 225 
see the print of his gun under his long coat. She stated that she knew he had a gun although she did not see it at that time. She testified that the appellant had threatened her, but he had not waved the gun or pointed it at her. Ikner stated that she told Sergeant Davis that the defendant had a gun under the back part of his coat and that she described what he was wearing and the direction in which he went. She said that she told Sergeant Davis that the appellant had "jumped on her" and had been hitting her. She had a scar on her neck and her hand was swollen at the time she was interviewed by Sergeant Davis.
The appellant testified, outside the presence of the jury, and stated that he did go by Ikner's house on May 3 and that he did have a sawed-off shotgun under his coat. He explained that he was moving from one residence to another and had placed the gun under his coat because it had been raining. He admitted that the gun was loaded and that he had three shells in his pocket, but he stated that he did not show the gun to Vanessa Ikner or "flash it."
The issue appears to be whether the officer had probable cause to stop and frisk a suspect after having been dispatched to the scene of a reported disturbance and also based upon the verbal complaint of an apparently battered woman who stated that the suspect had assaulted her and had a sawed-off shotgun in his possession. (a federal felony, 18 U.S.C.A., § 921, et seq.).
Title 15, § 154, Code of Alabama 1940, provides that an officer may make an arrest without a warrant, ". . . when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony." Reasonable cause has been defined by the appellate courts of Alabama, ". . . as a state of facts in the mind of the officer making the arrest which would lead a man of ordinary prudence to believe that a felony has been committed and that the person to be arrested is guilty of committing it. . . ." Sellers v. State, 48 Ala. App. 178, 263 So.2d 156 (1972).
In Oatsvall v. State, 57 Ala. App. 240, 327 So.2d 735 (1975), cert. denied, 295 Ala. 414, 327 So.2d 740, we held that an officer had reasonable cause to believe that the suspect had committed a felony and therefore could make a valid arrest and search incident thereto, where the officer observed the suspect within a few minutes of the robbery, within a half block of the scene of the crime, and where the appellant fit the general physical description and his clothing fit the description of that worn by the robber.
We find that it would be exceptionally poor police work, and in fact a violation of the policeman's duty, if he ignored the complaint of the victim that she had been physically assaulted by the appellant who was carrying a sawed-off shotgun at the time. Also Davis testified that Ikner told him the appellant was waving the gun in her face. To have taken down a full description of the appellant under those circumstances and to have come upon a person meeting that description within a minute and a block and a half of the scene of the reported assault, without stopping the suspect for further investigation, would have amounted to a violation of the officer's public trust, in our opinion. Any reasonable and prudent person placed in the identical circumstances as Sergeant Davis would have had reasonable cause to believe that the suspect had committed a felony.
Counsel contends that since appellant was merely walking down the street at the time he was stopped, absent any suspicious circumstances, that the stop and frisk rule does not apply, as set out in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). We do not read Terry v. Ohio to mean that the stop and frisk rule is limited to only circumstances where an officer observes some suspicious conduct on the part of the suspect as the officer approaches. The United States Supreme Court has held that the officer may have other information *Page 226 
with enough indicia of reliability to justify a forcible stop of a suspect and the protective seizure of a weapon. Adams v.Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In that case the Court stated:
 ". . . The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. . . .
* * * * * *
 ". . . [W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based upon the officer's personal observation, rather than on information supplied by another person. . . ."
The forceful stop of the appellant and the pat-down search therefore would be legal under the theory of a search incident to a lawful arrest pursuant to Title 15, § 154, supra, or pursuant to the stop and frisk rule set out in Adams, supra.
 II
Appellant contends that his constitutional rights were violated in that he was not represented by counsel at the time he was placed in a lineup.
The lineup complained of was conducted the day after the appellant's arrest and prior to his indictment. Appellant has no constitutional right to counsel at a preindictment lineup.Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411
(1972).
Deborah Lynn Hutchins testified outside the presence of the jury concerning her identification of the appellant. On May 4, 1977, she attended a lineup, consisting of six black males, being conducted under the direction of Police Sergeant Edward Cousins. She said all the men appearing in the lineup were around six feet in height, except one was slightly taller and slim. She estimated that the appellant was the heaviest, and weighed about 170 lbs. After viewing each man, she stated to Officer Cousins that she thought the appellant was the robber, and Cousins told her she had to be certain.
Hutchins said she recognized the appellant immediately when she walked into the lineup room, but she was "afraid to say" until she was positive. She asked Cousins to have each man put on a hat and glasses. She then asked to have the defendant say the words the robber had used when he committed the crime. Immediately after the appellant did so, she positively identified him as the robber. She said no one made a suggestion as to which man in the lineup was suspected by the police, and the identification was left entirely up to her.
Sergeant Cousins testified, outside the presence of the jury, concerning the lineup. He said the appellant was placed in the lineup with five other men from the jail who were of appellant's general height, weight and age. Cousins said that when Deborah Hutchins first viewed the lineup, she said that she was not certain which was the assailant, but thought that it was "number one" (the appellant). She stated that the robber had worn a hat and glasses and asked if Cousins could have each put on a hat and a pair of glasses. After each had complied, and the appellant had spoken, Cousins said that Hutchins stated, "Positive, number one, puggy face, the way he walks, the way he talks."
The appellant likewise testified, outside the presence of the jury, concerning the lineup. He stated that he and five other black men from the jail were put in the lineup and that each had been requested to try on the hat and glasses. He was then requested to repeat certain words the robber had used at the time of the crime. After he had done so, the lineup ended and he was brought to an interrogation room where he was questioned by Officer Cousins.
It is our opinion that the evidence presented to the trial court at that point failed to establish that the lineup procedure *Page 227 
was suggestive so as to give rise to a substantial likelihood of misidentification. The same witnesses testified repeatedly during the trial to substantially the same facts. Through lengthy questioning by defense counsel on direct and cross-examination, those witnesses never established that the lineup was impermissibly suggestive. In fact later in the trial during detailed cross-examination by defense counsel, Officer Cousins' testimony more strongly supported the fairness of the lineup. He stated that the appellant was 6 ft. 4 in. tall and that the other persons in the lineup were 6 ft. 3 1/2 in., 5 ft. 11 in., 6 ft. 3 in., 6 ft. 1 in., and 5 ft. 7 in. respectively. As to their ages, appellant told Cousins that he was 24. The others in the lineup were 19, 25, 29, 30 and 37 respectively. Their weights were 225, 185, 160, 189, 172 and 174 lbs. respectively.
During the State's case in chief, Deborah Hutchins reaffirmed her identification of the appellant. She said that it was based upon the way he walked, talked and looked in the face. She stated that she recognized his voice also. She made a positive in-court identification of the appellant, stating that she was positive that the appellant sitting in the courtroom was the man who robbed her on that night, "[b]ecause he looks the same."
It is apparent to this court that her in-court identification of the appellant had a source independent of the lineup, that being the robbery itself.
As we have pointed out before, the danger that a procedure will produce a misidentification may be substantially lessened by a course of cross-examination at trial that exposes to the jury the potential for error. Childers v. State, Ala.Cr.App.,339 So.2d 597, cert. denied, Ala., 339 So.2d 601 (1976). In the instant case, each identification witness was subjected to extended and detailed examination on cross-examination. Counsel for appellant left no stone unturned in his attempt to discredit the testimony of Deborah Hutchins as to her identification of the appellant.
The trial court, and this court on review, in evaluating the likelihood of misidentification, whether in court or out of court, must consider certain factors as set out in Neil v.Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Those factors include: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the confrontation and the crime.
After reviewing all of the evidence concerning identification given both on voir dire and in the presence of the jury, we find the factors set out in Neil v. Biggers, supra, to be favorable to the State in the instant case. The trial judge did not err in submitting the identification testimony to the jury. The identification testimony considered by the jury was ample to support its verdict in this regard.
 III
The appellant contends that the trial court erred in allowing two inculpatory statements made by him to go to the jury.
 A
On voir dire examination, outside the presence of the jury, Officer Ed Cousins testified concerning a statement the appellant gave him after the lineup had been conducted. Immediately following the lineup, the appellant was taken into an interrogation room, where Cousins informed him that the witness had made a positive identification. Cousins stated that the appellant was given his Miranda rights at that time, read them and signed a waiver of those rights. A full and complete predicate was laid by Cousins' testimony that the appellant made a statement without any threat, coercion, inducement, promise of reward, etc. The appellant wrote and signed the following statement:
 "I, Donald C. Deloach, on April 25, 1975, robbed the Majik Market, 7712 Fourth *Page 228 
Avenue, South. I used this sawed-off, .410 shotgun.
"Signed Donald C. Deloach"
The appellant, on voir dire, stated that after the lineup, Cousins brought him to an interrogation room and told him that he had a positive identification of the appellant as the robber. Appellant stated several times that he did not commit the robbery, but he said Cousins kept on alleging that he did. Appellant said he asked how much his bond would be if he cooperated, and Cousins said, "$10,000." The appellant said he asked Cousins what the sentence would be on the charge, and Cousins said "ten years at most." Later in his testimony when asked about that incident, appellant stated that Cousins told him the sentence would be at least ten years. [A robbery conviction in Alabama carries a minimum sentence of ten years, Title 14, § 415, Code of Alabama 1940.] Appellant testified that he asked about the possibility of probation if he cooperated, and Cousins said, "It depends on what your record is."
On voir dire by the State, the appellant testified that he understood his rights and that he was not coerced or intimidated into giving a statement to Sergeant Cousins, or a later statement to federal agents. Appellant stated that he was under the impression that if he cooperated with the police, it would be better for him, although the police did not promise him probation or anything else. Cousins testified as to substantially the same facts on direct examination in the presence of the jury.
The evidence in the instant case clearly shows:
(1) The appellant's rights were read to him and understood by him in full compliance with Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
(2) The voluntariness hearing was held outside the presence of the jury. The trial judge then ruled as a matter of law that the evidence was sufficient to meet the legal standards ofMiranda and as to voluntariness. He properly allowed the evidence to then be presented in the presence of the jury.Lewis v. State, 57 Ala. App. 545, 329 So.2d 596 (1975), affirmed, 295 Ala. 350,329 So.2d 599 (1976).
(3) The evidence was amply sufficient to support the trial court's finding that the confession was voluntary and could be submitted to the jury. The question of whether a confession is voluntary is a question of law to be first decided by the court. When the trial court has determined that the confession is voluntary, its decision is entitled to great weight on appeal and will not be disturbed unless it is contrary to the great weight of the evidence and appears to be manifestly wrong. Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967).
 B
On voir dire examination, outside the presence of the jury, John D. Williams, a Federal Alcohol, Tobacco and Firearms Agent, stated that he and fellow ATF Agent Edward Armstrong interviewed the appellant in the county jail on May 5, 1975. Williams stated that the appellant was given his Miranda rights and that he signed a form waiver. The proper predicate was laid to prove the voluntariness of the appellant's statement to the two federal agents, however, the waiver and statement (State's Exhibits F and G) were not read into the record at that time.
Later, on direct examination before the jury, Agent Williams testified as to his interview with the appellant on May 5. He again stated that the appellant was fully apprised of his rights and signed a waiver. Voluntariness of the appellant's statement was again proved. Williams emphatically denied that he or Agent Armstrong made any threat or any offer or inducement to the appellant to get him to make a statement and that neither of them told the appellant that it would be better for him, easier for him, or smoother for him if he made a statement.
The waiver and statement given to the ATF agents were admitted into evidence over objection. In the appellant's statement, he admitted to the federal agents that he sawed off the shotgun with a pipe *Page 229 
cutter and a hacksaw, and that about a week later, "I took the sawed-off shotgun to the Majik Market, 7712 Fourth Avenue, South, at night and robbed it. I took over $100 dollars."
Counsel for the appellant objected that the statement violated some of appellant's constitutional rights, which he failed to specify, and further that the statement was obtained in connection with a federal investigation of a different offense not related to the instant crime and thus was illegal, irrelevant and immaterial.
We know of no rule of law, and are cited to no authority by appellant, to the effect that a legal and voluntary confession taken by federal agents is inadmissible in a state proceeding. Certainly an illegal or involuntary statement taken by either state or federal agents would be inadmissible in either state or federal court, however, such is not the case here. We have found both the confession given to the city police and to the federal agents to have been completely voluntary on the part of the appellant after he had been fully apprised of his Miranda
rights. Counsel for appellant, in his brief, contends that the confession was inadmissible since the appellant was held without a probable cause hearing as required by Gerstein v.Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).Gerstein involved a class action civil rights suit challenging the Florida procedure of pretrial detention based on a prosecutor's information rather than by indictment. Under the Florida procedure, a prosecutor could merely file an information against a person, who would then be jailed pending trial without an opportunity for a probable cause determination. That part of the Florida procedure was stricken down.
Alabama does not follow the Florida procedure which was condemned in Gerstein. Here, the appellant was arrested on May 3, 1975, as outlined hereinabove, was identified at a lineup the next day, and a warrant for his arrest was issued that same day by a judicial officer. The complaint and warrant of arrest show the following witnesses for the State: Sergeant E.M. Cousins, Deborah Lynn Hutchins, and Sergeant J.R. Davis. We believe there was a sufficient probable cause hearing before a judicial officer in the instant case to comply with Gerstein.
That case held that such a probable cause hearing need not be an adversary proceeding wherein the suspect is entitled to counsel. It should be further noted that Gerstein clearly holds that even in the event the arrest and detention is illegal, a subsequent conviction is not voided thereby.
 IV
Appellant contends that he was prejudiced by the State's failure to discover and to furnish him with the record of an arrest of witness Deborah Hutchins on a grand larceny charge which occurred almost five months after the robbery in question. The record shows that Miss Hutchins was arrested on September 16, 1975, on a charge of larceny of a motorcycle, but was released from that charge two days later. There was no conviction on her record. Likewise, there was no connection whatsoever shown between the instant robbery and the larceny charge against Miss Hutchins.
Contrary to appellant's contention, this is not a case of the State possessing and deliberately suppressing material and relevant evidence favorable to the appellant as in Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763,31 L.Ed.2d 104 (1972), and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793,17 L.Ed.2d 737 (1967) cited in appellant's brief.
Contrary to the appellant's contention, there is no constitutional right to discovery in a criminal case, and Bradyv. Maryland, supra, did not create one. Weatherford v. Bursey,429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).
The law is also clear that a party may not attack the credibility of a witness by showing that the witness had previously been arrested. Title 7, § 434, Code of Alabama 1940, relates to the credibility of a witness as affected by priorconvictions of crimes involving moral turpitude. Parker *Page 230 v. State, 280 Ala. 685, 198 So.2d 261 (1967). An arrest has no bearing whatsoever upon the guilt or innocence of an accused.Davis v. State, 21 Ala. App. 637, 11 So. 314 (1927).
 V
The trial court committed no error in admitting the sawed-off shotgun into evidence. The gun had been identified by the appellant as the one he was carrying when arrested. It had likewise been identified by the arresting officer. The appellant's confession established that he used the weapon in the robbery. We have already found the search of the appellant and seizure of the weapon to have been legal. In addition, throughout the trial the weapon had been identified, discussed, examined, testified about, and used in a demonstration. It therefore had become evidence in the case even without a formal offer of admissibility. However, when formally offered into evidence, counsel for appellant objected.
There is no question but that a weapon or other instrumentality used in the commission of a crime, when properly identified, is admissible in evidence. Gentry v.State, Ala.Cr.App., 344 So.2d 1246 (1977), cert. denied, Ala.,344 So.2d 1249; 6 Alabama Digest, Criminal Law, 404 (3). The rule favoring admissibility of such a weapon is especially applicable where, as in the instant case, the appellant admits possession of the weapon and its use in the crime. Lee v.State, 265 Ala. 623, 93 So.2d 757 (1957).
 VI
A record consisting of 6 volumes containing 1,240 pages resulted from this relatively simple and uncomplicated robbery. The trial judge entertained numerous motions, permitted extended voir dire examination of witnesses and patiently heard lengthy arguments of counsel. We have reviewed the record, exhibits and briefs submitted, and we have considered the oral arguments presented in the case. The record discloses that the case was fairly tried. The appellant was accorded every right which due process of law requires under our legal system, and then some. We conclude that the rulings of the trial court, challenged by the appellant, did not constitute harmful or prejudicial error. It is the opinion of this court that the judgment, sentence, and rulings of the trial court were supported by the evidence and the law.
AFFIRMED.
All the Judges concur.