This appeal is taken from a conviction of robbery and jury sentence of thirty years' imprisonment. The appellant is represented both at trial and on appeal by court appointed counsel.
Two issues are presented for review: (1) The suggestiveness of the preindictment line-up procedure and (2) the constitutionality of the manner in which the grand and petit juries of Mobile County were selected.
At approximately 6:30 on the evening of January 4, 1977, three men participated in the robbery of Tom's Dairy Freeze in Pritchard, Alabama. Juanita Barron testified that the appellant came to the customer service window where she was working, grabbed her by the arm and placed a gun to her head. Responding to Ms. Barron's cries for help, Debbie Sikes came out from the cooking area of Tom's and asked the appellant what he wanted. The appellant then pointed his pistol at Ms. Sikes and demanded "the money". After receiving it, the appellant and his two accomplices escaped on foot.
The Pritchard Police were immediately notified and, pursuant to a description of two of the suspects, apprehended the appellant and Ivan Robinson within forty-five minutes and approximately twelve to fifteen blocks from the robbery scene.
Ms. Barron and Ms. Sikes viewed a lineup about one hour after the robbery and each identified the appellant.
The appellant presented several witnesses to support his defense of alibi. Betty Whitfield, the girlfriend with whom he was living, testified that she and the appellant were watching the evening news and that he went out for cigarettes about ten minutes after the news came on, which was either at 5:30 or 6:00 P.M. Ms. Whitfield's house was about four or five blocks from Tom's Dairy Freeze.
Betty Whitfield's mother, Georgia Edna Whitfield, testified that the news was on when the appellant came to her house. He left about five minutes after the next program began. Mrs. Whitfield's house was one block away from her daughter's.
Finally Ms. Louise Whitfield, Betty Whitfield's sister, testified that the appellant and Ivan Robinson came to her house about 6:50 P.M. to sell a bicycle. After they talked a "long while" she bought the bicycle and the appellant left. Ms. Louise Whitfield lived about two or three blocks away from her mother's house.
 I
Initially the appellant contends that his motion to suppress the identification evidence was due to be granted because a pretrial line-up was unduly suggestive for the reason that he was the only person in the line-up wearing a long black coat.
An identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification violates due process. Stoval v. Denno, 388 U.S. 293, 87 S.Ct. 1967,18 L.Ed.2d 1199 (1967). The standard for determining whether an identification procedure is unnecessarily suggestive involves a consideration of the totality of the circumstances in each particular case. Stoval, supra; Foster v. California,394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Caver v. State ofAlabama, 537 F.2d 1333 (C.A.5, 1976); Dawson v. State,47 Ala. App. 293, 253 So.2d 362 (1971).
In determining where a pretrial identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law, two related aspects of the totality of the circumstances must be considered. First, the court must determine whether the police procedures at issue were, in fact, suggestive. If suggestiveness is found, the court must examine the reliability of the *Page 725 
identification, in spite of the suggestive nature of the confrontation. In such an examination, it is clear that the reliability issue is the determining factor, and unjustified, suggestive procedures may be over-borne when there are present sufficient indicia of reliability. Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Childers v. State, Ala.Cr.App., 339 So.2d 597, cert. denied, Ala., 339 So.2d 601
(1976).
 A.
In determining the suggestive nature of a confrontation, no single circumstance generally suffices to render evidence of a line-up identification inadmissible.
 "Thus the fact that the lineup, as alleged by the defendant, was so composed that it made his identification unreasonably easy, has generally been held not sufficient to require exclusion of the identification evidence. And while the courts have generally taken into account the defendant's physical appearance, compared to that of the other participants in the lineup, in determining whether the lineup was suggestive, they have not found justification for characterizing a lineup as suggestive, although there is authority to the contrary, on the basis merely of the defendant's claim that when he appeared in the lineup, his clothing was distinctive enough to set him apart from the others, where the defendant was wearing his own clothing, or where the witnesses had other bases for identifying him." 39 A.L.R.3d 487 at 491, Annotation: Admissibility of evidence of line-up identification as affected by allegedly suggestive line-up procedures.
The fact that the robber was described as wearing a long black coat, coupled with the fact that the appellant was the only participant in the line-up wearing a long black coat, no doubt served to inject an element of suggestiveness into the line-up and subject it to criticism. However, under the circumstances of this case, such taint was not unnecessarily suggestive and did not vitiate the line-up identification.
A number of courts have concluded that, although the defendant's attire at the time he appeared in a police line-up was distinctive enough to set him off from the other participants, this did not affect the fairness of the proceeding and would not therefore render the identification evidence based on the line-up inadmissible, where the defendant was only wearing the same clothing he had on at the time of his arrest. People v. Jones, 44 Mich. App. 633, 205 N.W.2d 611
(1973); State v. Taylor, 280 N.C. 273, 185 S.E.2d 677 (1972);McCay v. State, 51 Ala. App. 307, 285 So.2d 117, cert. denied,291 Ala. 788, 285 So.2d 122 (1973); People v. Sanders,14 Ill. App.3d 826, 303 N.E.2d 552 (1973); People v. McMorris,17 Ill. App.3d 364, 308 N.E.2d 291 (1974); Presley v. State,224 Md. 550, 168 A.2d 510, cert. denied, 368 U.S. 957,82 S.Ct. 399, 7 L.Ed.2d 389 (1961); Hernandez v. State, 7 Md. App. 355,255 A.2d 449 (1969) and other cases cited in 39 A.L.R.3d 487,499-503, §§ 9 (6)-10. While no doubt this practice is suggestive, the courts have not found it to be unnecessarily suggestive or a violation of due process where the suspect is apprehended shortly after the crime wearing clothes matching the description given by the victim and is placed in the line-up wearing the same clothes. See also United States v.Ball, 381 F.2d 702 (6th Cir. 1967); State v. Rogers,275 N.C. 411, 168 S.E.2d 345 (1969); Harris v. Turner, 466 F.2d 1319
(10th Cir. 1972); Childers, supra; Note, Pretrial Identification Procedures — Wade to Gilbert to Stovall: Lower Courts Bobble the Ball, 55 Minn.L.Rev. 779, 810-812 (1971); Sobel, Eyewitness Identification in Criminal Cases (1972), p. 105; Wall, Eyewitness Identification in Criminal Cases (1965, 1975 ed.), pp. 32-33, 55.
 B.
Even the fact that the defendant may have been so clothed when he appeared in the line-up that he stood out from the other participants does not make the proceeding so suggestive as to warrant the exclusion of the identification evidence where the witness, in picking out the defendant *Page 726 
from the line-up, had other bases for doing so. 39 A.L.R.3d 487 at 500, § 10. This is because the determinative factor in searching for the existence of unjustified suggestive pretrial identification procedures is the reliability of the victim's testimony. Neil v. Biggers, supra; Childers, supra.
 "(T)he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382.
Other factors may also be considered. See People v. Kachar,400 Mich. 78, 252 N.W.2d 807 (1977).[1]
On consideration of these factors we conclude that Ms. Barron's and Ms. Sikes' identifications of the appellant were sufficiently reliable to avoid the due process challenge.
The line-up was composed of six men of the same race and was conducted approximately one hour after the robbery. Ms. Barron testified that she observed the appellant's face under "real bright" flood lights for approximately four minutes. During this time the appellant was holding her by the arm. She stated the appellant was wearing a long black leather coat with a cape around the shoulders and that the coat was "unusual" and "outstanding". At the hearing on the motion to suppress she testified that she
 "noticed his face and the way he did his hair, and especially the coat he wore, but I never will forget that face."
She further testified that she could identify the robber even if she had never viewed the line-up; that she was absolutely positive in her identification; that when she looked at the line-up she focused on the man's face rather than his coat, although she did consider the coat in making her identification. Cross examination of Ms. Barron both on voir dire and before the jury failed to reveal any hint that her identification was unnecessarily influenced by the coat.
Ms. Sikes also identified the appellant in the line-up after having observed him under substantially the same conditions as Ms. Barron at the time of the robbery. She testified that she thought someone was "playing" with Ms. Barron when she heard her scream and looked at the appellant's face "trying to see who it was". Two spotlights were centered over the service window and she "could see everything at the window" and could see as well as she could in the courtroom. Ms. Sikes observed the appellant from a distance of two to three *Page 727 
feet and continuously looked at him from three to five minutes except for one time when the bag containing the money split.
She stated that her line-up identification of the appellant was based strictly on his face and that she wasn't paying any attention to his clothing; that other than the fact that he didn't have a toboggan on, she didn't notice what he was wearing at the line-up. Other testimony and evidence convince us that the allegedly ubiquitous black coat played absolutely no part in her identification of the appellant.
A review of the testimony of both Ms. Barron and Ms. Sikes justifies the conclusion that the appellant's distinctive clothing was not the pivotal identifying factor. A consideration of those other factors set forth in this opinion and which we are able to answer from the record confirms this conclusion. Under the totality of the circumstances, the identification testimony was reliable and the procedure was not so unduly suggestive that it was conducive to mistaken identification. However, had the two witnesses demonstrated some hesitancy or inability in identifying the appellant our conclusion and finding might very well have been different.
 II
The appellant alleges that his motion for new trial was due to be granted on the grounds that the grand jury which indicted the appellant and the petit jury which convicted him were selected in an unconstitutional manner due to the exclusion of black persons from the jury rolls of Mobile County.
This objection was first raised by a motion for new trial filed after the appellant had been tried and convicted and notice of appeal given. This objection was therefore waived.
 "(We hold that henceforth a failure by the defendant in a criminal case to raise proper objection to the composition of a grand or petit jury, including, but not limited to, the constitutional ground of the jury selection process, before entering upon the trial of the case on its merits, constitutes a waiver of his right to do so, subject, of course, to the recognized exceptions of fraud and as to matters which were not known, or by the exercise of due diligence, could not have been known, before trial." Williams v. State, Ala., 342 So.2d 1328 at 1330 (1977).
See also Manson v. State, Ala.Cr.App., 349 So.2d 67 (1977).
The constitutionality of the jury selection process in Mobile County has been the subject of continuing litigation since 1970. Preston v. Mandeville, 428 F.2d 1392 (5th Cir. 1970);Preston v. Mandeville, 479 F.2d 127 (1973). Most recently, and three days before the appellant was tried, a consent decree was entered into in the United States District Court for the Southern District of Alabama ordering a temporary new jury roll for Mobile County. Preston v. Mandeville, Civil Action No. 5059-68-H, April 15, 1977. The appellant argues that because the issuance of this order was not "widespread" public knowledge at the time of the appellant's trial, the appellant and his attorney had no reason to know of the unconstitutionality of the juries in Mobile County. We have already found a similar contention to be without merit. Malloyv. State, Ala.Cr.App., 357 So.2d 671, 1978. The exercise of due diligence could have discovered this constitutional objection to the jury selection process. See Malloy, supra.
We have carefully reviewed the entire record and have written to those objections raised by the appellant on appeal. Finding no error adverse to the substantial rights of the appellant we reach the conclusion that the judgment of the trial court is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] "Thus, factors which the court should use in determining whether an independent basis exists should include:
1. Prior relationship with or knowledge of the defendant.
 2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.
 3. Length of time between the offense and the disputed identification. See Anderson [People v. Anderson], 389 Mich. [155] 214, 205 N.W.2d 461, for analysis of the curve of forgetting.
 4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.
 5. Any previous proper identification or failure to identify the defendant.
 6. Any identification prior to lineup or showup of another person as defendant.
 7. Still another consideration, not mentioned in Wade, but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim. `In critical situations perception will become distorted and any strong emotion (as opposed to mildly emotional experiences) will affect not only what and how much we perceive, but also will affect our memory of what occurred.' 389 Mich. 211, 205 N.W.2d 489.
 Factors such as `fatigue, nervous exhaustion, alcohol and drugs', 389 Mich. 213, 205 N.W.2d 490, and age and intelligence of the witness are obviously relevant. Levine and Tapp, The Psychology of Criminal Identification: The Gap from Wade to Kirby, 121 U.Pa.L.Rev. 1079, 1102-1103 (1973).
8. Any idiosyncratic or special features of defendant." *Page 728