HARRIS, Presiding Judge.
Appellant was convicted of forgery in the first degree and the Court sentenced him to four years imprisonment in the penitentiary. He was represented by Court-appointed counsel and at arraignment he waived the reading of the indictment and pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. New counsel was appointed to represent him on this appeal.
The evidence presented by the State is undisputed. Appellant did not testify nor did he offer any evidence in his behalf.
The sufficiency of the evidence is not presented for review. There was no motion to exclude the State’s evidence; there was no request for the affirmative charge; no exceptions were reserved to the oral charge of the Court, and there were no adverse rulings on the admission or exclusion of any evidence which contained any merit. No motion was made to quash the indictment on the ground of invidious racial discrimination in the selection of the venire for the grand and petit jury prior to the trial in chief.
Appellant’s new counsel, appointed to represent him on appeal, did file a motion for a new trial, alleging that the jury rolls from which the grand jury which indicted appellant and the petit jury which convicted him were “unconstitutionally constituted” in that blacks were systematically excluded therefrom. Following several special continuances and a hearing on this motion the motion for a new trial was denied. More will be said about this motion later in this opinion.
The testimony presented by the State on the trial in chief tended to show that prior to July 5,1975, the ILA Local 1410 building in Mobile, Alabama was broken into and a checkbook containing the Local’s checks together with a check writing machine were taken. The break-in was reported to the Police Department, the local banks and the Mobile Check Exchange. Some time after July 5, 1975 appellant presented one of the stolen ILA Local’s checks for cashing at the Mobile Check Exchange. The Exchange had been notified to be on the alert for the presentation of the Local’s checks for cashing and advised that all checks belonging to the Local required the signature of three officers of the Local to be authentic. The three officers were Ison Clemmon, Sennor Irby and Raif Daniels.
Appellant presented one of the stolen checks to Ms. Loraine Brown at the Mobile Check Exchange and she immediately advised her supervisor who told her to stall appellant by asking for some identification. Appellant presented Ms. Brown with a driver’s license in the name of Wilson Paige III. The check bore only the signature of Ison Clemmon, and Mr. Clemmon testified that what purported to be his signature was not his true signature but was a forgery.
Ms. Brown’s Supervisor, Mr. J. B. Ward, came out of the back office with a pistol and confronted appellant who started begging Mr. Ward not to shoot him. Mr. Ward informed appellant that he was not going to shoot him and told him to sit in á chair near the door. Appellant started toward the chair and decided it was best for him to depart the premises. He ran out the door and in his haste to escape he ran into a post supporting a part of the building and knocked it down. As appellant was getting up from a prostrate position, Mr. Ward almost caught him but appellant eluded Mr. Ward and Mr. Ward told him to halt and fired a shot in the ground. In the words of Mr. Ward, “I almost caught him before he got back up and when he did get up he was in super duper high gear and as he got around the next dip right into the arms of the police.”
*673 It developed during the trial that there was, indeed, a Wilson Paige III but he had been committed to Searcy Mental Hospital in June of 1975. Before he was committed someone broke into his house and stole his billfold in which he had his driver’s license. The father of Wilson Paige III testified that the endorsement on the back of the check was not the signature of his son. He identified his son’s signature on the driver’s license and it was introduced into evidence. The facts in this case point unequivocally to the guilt of appellant.
We turn now to a consideration of the issues raised by appellant in his motion for a new trial. In pertinent part appellant alleges:
“3. That the Grand Jury which returned the present indictment herein was unconstitutionally drawn in that blacks were systematically excluded thereon.
“4. That the venire from which his petit jury was selected was unconstitutionally drawn in that blacks were systematically excluded therefrom.
“5. That the fact that both his Grand Jury and petit jury were constitutionally infirm was unknown to the Defendant prior to the time of trial and could not have been known to him through the exercise of due diligence.”
At a hearing on the motion for new trial, Mary T. McCord testified that she was Chief Clerk of the Mobile County Jury Commission. She stated that in 1973 there were approximately 28,000 names on the County jury roll. This number was reduced to 24,000 or 25,000 by December of 1975.
Mrs. McCord stated that she was familiar with the 1973 opinion of Preston v. Mandeville, 479 F.2d 127 (5th Cir. 1973), in which the Court of Appeals held that the jury rolls of Mobile County were invalidly compiled, resulting in systematic exclusion of blacks from the rolls. That opinion also ordered the implementation of steps to correct the defects in the selection process.
Appellant introduced the Mandeville opinion into evidence and it is part of this record. He also introduced an order, dated December 16, 1975, from the United States District Court for the Southern District of Alabama. This order, signed by Judge W. B. Hand, states that the jury rolls of Mobile County should be filled in accordance with provisions in a letter from George M. Callahan, Director of Mobile County Data Processing to Maury Friedlander, Attorney for Mobile County. This letter was written January 23, 1975. Judge Hand’s order further states that the Callahan letter is on file in the records of the Federal District Court for the Southern District of Alabama.
Mrs. McCord testified that, although she was familiar with the District Court order, she did not receive a copy of it before January of 1977. Mrs. McCord further stated that the Grand Jury which indicted appellant and the Petit Jury which convicted him were drawn from the jury rolls which were not in compliance with the orders of the Circuit Court of Appeals and the District Court.
Since 1975, Mrs. McCord stated, no new names had been added to the rolls until a consent decree was filed on April 15, 1977. This decree is signed by James S. Ward, Assistant Attorney General for the State of Alabama. It states in part, “The parties (Preston, et al., Mandeville) hereby acknowledge and agree that the jury list presently being used in Mobile County, Alabama, shall no longer be used for the selection of juries.” This decree was introduced into evidence by appellant at the hearing on motion for new trial.
Appellant then testified that he was not aware of any defect in the manner in which the jury rolls were compiled in Mobile County at the time he was indicted and tried.
Appellant’s motion for new trial was denied.
In support of his contention that his motion for new trial was erroneously denied, appellant relies solely on Williams v. State, Ala., 342 So.2d 1328. We think that this reliance is misplaced.
Williams announces a rule of procedure for the preservation for appellate review adverse rulings on jury composition. The *674 Supreme Court of Alabama in Williams v. State, 342 So.2d 1328 held:
“We state the rule thusly: A motion challenging the composition of a grand jury, a petit jury, or qualifications of individual jurors, filed after the commencement of trial, must allege, and proof must show, that grounds for the motion were not known to the defendant before he went to trial, or that he could not have known them by exercising due diligence.”
This, appellant failed to do.
The Supreme Court based its ruling on Higdon v. State, 20 Ala.App. 649, 104 So. 913. There the Court of Appeals held:
“ ‘If the defendant or his attorney knew about the matter of drawing the jury, or, by the exercise of due diligence, could have ascertained the facts, he cannot for the first time raise the question [of improperly drawn venire] by motion for a new trial.’ ” (Emphasis added).
Appellant, in his reading of Williams, supra, has overlooked the important factor that representation by counsel has on this question. He cannot satisfy the procedure rule of Williams by testifying that he, alone, was unaware of the defect in the compilation of the jury rolls.
The decision in Preston v. Mandeville, supra, was announced in 1973. Judge Hand’s court order was issued in 1975. Available at that time in the records of the District Court for the Southern District of Alabama were letters setting forth proposals for correction of the defectively compiled jury rolls. This preceding fact was set out in Judge Hand’s order of December 16, 1975. Finally, the Alabama Supreme Court’s pronouncement of a new rule governing this matter was made on February 25, 1977, a month before appellant was tried. Through “due diligence” these facts could have been discovered. This Court has also reiterated the rule set forth in Williams in Manson v. State, Ala.Cr.App., 349 So.2d 67.
It is inconceivable that appellant’s trial counsel, who is widely known as an experienced trial lawyer, did not know of the previous decisions and orders concerning the composition of the jury roll and the jury box of Mobile County. Failing to file a motion to quash the jury venire prior to trial could well have been trial strategy. He gambled and speculated on the verdict of the jury thinking, perhaps, this issue could be raised later and he could get a new trial.
Thus, we hold that appellant, by failing to raise proper objection to the composition of the grand' and petit juries prior to trial of the case constituted a waiver of his right to do so, and he cannot now be heard to complain.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.