SAM TAYLOR, Judge.
Appellant, James Watkins, was indicted and convicted for robbery in the first degree and attempted murder in Jefferson County. He was sentenced to twenty years’ imprisonment for the robbery conviction and ten years’ imprisonment for attempted murder.
Mr. Baker, the alleged victim in this ease, was working with his wife at the all-night Ride Service Station in Birmingham, at approximately 3:00 a.m., when two black males robbed them and shot Mr. Baker. The projectile entered under Baker’s right arm, proceeded through his body and exited under his left arm. He remained in intensive care at the hospital for about three weeks.
Shortly after the shooting, on his first visit to see Mr. Baker, Sergeant John Bare-field, the investigating officer, received a description of the perpetrator of the crime. Mr. Baker described his assailant as a black man of average height, about 140 pounds, with a round face and oriental eyes. Sergeant Barefield testified that after leaving Mr. Baker, he went to the scene of the crime and from the interviews he conducted at that time, discovered a name of a person who was rumored to haye committed the crime. He ran the name through the police computer, but due to the lack of an accurate name, he received no information. He testified that in order to receive information from the computer, a proper name, or a similar name and a birth-date must be fed into the computer. In order to obtain a birthdate on the person who allegedly committed the crime, he went to the high school located about three blocks from the Ride Service Station. Sergeant Barefield obtained the full name of James Douglas Watkins, the appellant, and a birthdate. From a file the school kept on dropouts, he obtained the junior high school picture of the appellant and four other junior high school pictures of teenagers of similar appearance.
From the school, Sergeant Barefield brought the pictures to Mr. Baker, who was then listed as in critical condition in the intensive care unit at the hospital. Sergeant Barefield testified that he was afraid Mr. Baker would not live long. From the five junior high school pictures, Mr. Baker picked out the appellant, but stated that it was hard to identify him from pictures of children.
Sergeant Barefield then returned to the police station and ran the proper name and birthdate through the police computer. He received a more recent photograph of the appellant, which he brought to the hospital along with five other photographs of men of similar appearance and age, for Mr. Baker to view. Mr. Baker quickly selected the appellant from this photographic line-up. . At this time, a warrant was issued for the arrest of Watkins.
After the appellant had been arrested the following day, Sergeant Barefield brought Mr. Baker the third photographic line-up. It was a single picture of five men, one of whom was the appellant. The appellant was the only man who was standing straight in that picture; the four other men had their knees bent. Baker once again identified Watkins as the man who shot him.
The only issue we will address in this case is whether the appellant’s due process rights were violated by the failure of the trial court to grant appellant’s motion to suppress the in-court identification of the appellant by Mr. Baker.
The standard was established by the United States Supreme Court in Simmons *1272 v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968): “[E]aeh case must be considered on its own facts, and ... convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so im-permissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.” Factors listed by the Supreme Court to be considered in determining the likelihood of misidentification include “the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.” Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).
We must first consider whether the identifications were impermissibly suggestive, and then whether a substantial risk of mis-identification was created. Jackson v. State, 361 So.2d 1152 (Ala.Cr.App.1977). The fact that a photograph was made in which all the participants except the appellant had their knees bent is revealing. The law enforcement officers obviously sought to have all the participants appear to be about the same height in order to comply with the dictates of the United States Supreme Court. They were “bending over backwards” to avoid holding an impermissi-bly suggestive line-up. To the officers’ surprise, this line-up photograph was full-length. The identification procedure was somewhat unusual in this case, but considering the evidence in light of the factors listed in Neil v. Diggers, supra, we do not feel that it was impermissibly suggestive.
The appellant introduced the photographic line-ups into evidence during the cross-examination of Mr. Baker. The jury was, therefore, informed of the possibility of misidentification and could study the pictures themselves to decide whether the pictures were impermissibly suggestive. De-
Loach v. State, 356 So.2d 222 (Ala.Cr.App.1977).
Mr. Baker made a positive in-court identification of the appellant based on his observation of the appellant on the night of the robbery. He testified at trial that “[w]hen this actually happened, I took the man who had the gun and I just tried to drill a picture of his face into my head. I figured I was going to get shot, so I would need that, and that’s exactly what I did.” Even if Mr. Baker’s pretrial identification had been the result of suggestion, he made an independent in-court identification based upon his memory of the appellant the night of the robbery, and, therefore, a substantial risk of misidentification was not created. Jones v. State, 431 So.2d 1367 (Ala.Cr.App.1983); Lee v. State, 444 So.2d 895 (Ala.Cr.App.1984).
We have reviewed and considered the other issues raised on appeal and find them to be without merit.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.