George W. **PRESTON** et al., Plaintiffs-Appellants,

v.

John E. **MANDEVILLE** as Clerk of the Thirteenth Judicial Circuit of Alabama (Mobile County), et al., Defendants-Appellees.

No. 28775.

United States Court of Appeals, Fifth Circuit.

July 7, 1970.

George W. Dean, Jr., Destin, Fla., Orzell Billingsley, Jr., James K. Baker, Birmingham, Ala., Charles Morgan, Jr.; Reber F. Boult, Jr., Atlanta, Ga., Melvin L. Wulf, New York City, for plaintiffs-appellants.

McDonald Gallion, Atty. Gen. of Alabama, Montgomery, Ala., Leslie Hall, Robert P. Bradley, Asst. Attys. Gen., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.

BELL, Circuit Judge.

This appeal involves a challenge of the jury system in Mobile County, Alabama on the basis of alleged racial discrimination in compiling and maintaining the

master roll of jurors. The discrimination is said to be in the form of too few Negroes being included on the master roll. The proof, of a bare bones nature, was accepted by the district court to demonstrate a Negro population of jury age of 29.3 per cent and a total number of Negroes on the master roll of 16 per cent. On this finding of fact, the court concluded that the disparity was not such as to make out a charge of racial discrimination. No consideration was given to the method of compilation or maintenance of the roll. For the reasons stated, we reverse and remand with direction.

■ The jury is one of our most important institutions. Trial by jury is one of our most valued rights. The national policy with respect to effectuating the use of juries on a non-discriminatory basis, and on constitutional precepts, was well stated in Smith v. Texas, 1940, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84:

"It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government. We must consider this record in the light of these important principles. The fact that the written words of a state's laws hold out a promise that no such discrimination will be practiced is not enough. The Fourteenth Amendment requires that equal protection to all must be given —not merely promised."

311 U.S. at 130, 61 S.Ct. at 165.

The Alabama jury system is described in Carter v. Jury Commission of Greene County, 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, and also in Bokulich v. Jury Commission of Greene County, N. D.Ala., 1968, 298 F.Supp. 181. See also Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13, 19 (en banc).

■ The practice in Mobile County was to purge the roll during the course of each year of the names of deceased persons and those removing from the county. The remaining names were retained on the roll. Annually the names of new jurors were added as needed. The names of jurors were obtained from voter lists, city directories, telephone directories, and from lists submitted by jury commissioners and others. No records were kept as to the race of persons on the roll despite the fact that in United States ex rel. Seals v. Wiman, 5 Cir., 1962, 304 F.2d 53, we found that Negroes as of 1958 constituted less than two per cent of the persons on the jury roll in Mobile County and that the jury roll was constitutionally defective. The inference is that such names were added as the clerk or the jury commissioners determined to add, and the method is to be contrasted with random selection from a central source or sources using objective criteria. See Gewin, The Jury Selection and Service Act of 1968, 20 Mercer L.Rev. 349 (1969).

The proof submitted by plaintiffs was that the roll consisted of 18,120 names. Using a scientific sampling process, 394 names were selected from the roll on a random selection basis. Each was investigated to ascertain the racial characteristic of the juror. It developed that 326 of these were white, 54 were Negroes and the race of 14 could not be ascertained. With these results, plaintiffs projected that Negroes comprised less than 15 per cent of the master roll. An expert witness substantiated the sampling method used and testified that the method would contain a margin or error of approximately two per cent. It was stipulated that 29.3 per cent of the total number of residents in the county between ages 21 and 64, the juror qualification age bracket, were Negroes. No evidence was offered by plaintiffs or defendants as to the number of prospective jurors who might be disqualified or ex-

empt. We conclude that this disparity in the circumstances of a selection process such as was in use in Mobile County made out a prima facie case of discrimination based on race.

Defendants countered with proof based on a count by race of those jurors who were summoned and actually report-ed for duty between September 9, 1968 and March 24, 1969. Jurors were summoned each week during this period except for two weeks and a tabulation by race was conducted throughout the period. The following table demonstrates the results stated in percentages of Negroes actually reporting for jury service.

| WEEK | NEGRO JURORS | WEEK | NEGRO JURORS |
|---|---|---|---|
| 9– 9–68 | 11.2% | 10–14–68 | 13.2% |
| 9–16–68 | 8.7% | 10–21–68 | 7.3% |
| 9–23–68 | 10.8% | 10–28–68 | 13.8% |
| 9–30–68 | 8.5% | 11– 4–68 | 15.8% |
| 10– 7–68 | 10 % | 11–12–68 | 22.5% |
| 11–18–68 | 11.4% | 2–10–69 | 23.3% |
| 12– 2–68 | 21.9% | 2–17–69 | — |
| 12– 9–68 | 21.5% | 2–24–69 | 17.5% |
| 1– 6–69 | 21.8% | 3– 3–69 | 21.9% |
| 1–13–69 | 15.4% | 3–10–69 | 12.2% |
| 1–20–69 | — | 3–17–69 | 25 % |
| 1–27–69 | 14.1% | 3–24–69 | 25 % |
| 1– 3–69 | 15.2% | | |

The district court averaged these figures and concluded that 16 per cent of those on the master roll were of the Negro race. The court then determined that this was not such a marked variation as to establish a pattern of discrimination on the part of defendants.

We are left in doubt as to the true facts regarding the Mobile County jury roll. As stated, plaintiffs made out a prima facie case of discrimination. The testimony was that additional names were added to the master roll during the period of the pendency of this suit but this proof was indefinite as to number and race and adds nothing to the case by way of a defense.

■ We hold that those defendants charged with compiling and maintaining jury rolls have a duty, once a prima facie case is established against them, to come forward with such proof as will clearly demonstrate the correct status of the master roll. Public confidence in the jury as an institution can hardly be maintained in a shroud of secrecy regarding the composition of the master jury roll or list. It is important to the stability of the law that the legality of jury systems be settled and defendants have a duty, stemming from their public positions, over and above that common amongst defendants, to justify the validity of the jury system from a constitutional standpoint.[1]

With respect to the conclusion of the district court that the requisite disparity was absent, it must be noted that Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567, is to the contrary. In that case, decided after the entry of judgment here, the Supreme Court held that a jury list in Taliaferro County, Georgia on which Negroes comprised 37 per cent of the names but where Negroes constituted 60 per cent of the population, gave rise to a situation which warranted corrective action by a federal court in the absence of a

1. On remand, the 1970 census should be available for population purposes.

countervailing explanation by the jury commissioners. There the court stated:

"In sum, the appellants demonstrated a substantial disparity between the percentages of Negro residents in the county as a whole and Negroes on the newly constituted jury list. They further demonstrated that the disparity originated, at least in part, at the one point in the selection process where the jury commissioners invoked their subjective judgment rather than objective criteria. The appellants thereby made out a prima facie case of jury discrimination, and the burden fell on the appellees to overcome it."

The proof in that case demonstrated that the disparity originated in part in the selection process. The same is true here. Defendants maintained the master roll partially at least on subjective judgment as distinguished from objective criteria or on a random selection system. Here as in Turner v. Fouche, plaintiff's prima facie case cannot be overcome without explanation on the part of defendants as to why the substantial disparity exists between the percentage of Negro citizens on the master roll and their percentage of the general population in the jury service age bracket.[2]

The judgment of the district court is reversed and the case is remanded with direction that defendants be required to present clear and convincing evidence as to the racial characteristics of those persons on the jury roll. In the event it develops that racial discrimination exists in the composition or maintenance of the master roll, the district court is directed to afford such relief as may be indicated. Cf. the suggestions contained in Carter v. Jury Commission of Greene County, supra, 396 U.S. 320, at 339, 90 S.Ct. 518, at 528, 24 L.Ed.2d 549 at 563.

Reversed and remanded with direction.

2. For recent cases approving jury lists containing a degree of racial disparity, see Simmons v. United States, 5 Cir., 1969, 406 F.2d 456; Hunt v. United States, 5 Cir., 1968, 400 F.2d 306. See also Swain v. Alabama, 1965, 380 U.S. 202, 208–209, 85 S.Ct. 824, 13 L.Ed.2d 759, 766.