George **FORD** et al., Plaintiffs-Appellants,

v.

Frank **WHITE** et al., Defendants-Appellees.

No. 27944.

United States Court of Appeals,
Fifth Circuit.

July 24, 1970.

**952**

Robert B. Fitzpatrick, L. A. Aschenbrenner, Jackson, Miss., for plaintiffs-appellants.

Will S. Wells, Jackson, Miss., E. C. Clements, Rolling Fork, Miss., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This is a class action by Negro citizens of Issaquena County, Mississippi, charging discrimination on the basis of race and sex in jury selection procedures of that county. There is alleged to be discrimination by the Board of Supervisors in the selection of names for the master jury list and by other public officials in the composition of the venires for grand and petit juries.[1]

The District Court denied injunctive relief and dismissed the complaint in an opinion reported at 299 F.Supp. 772 (S. D.Miss.1969).

The adult population of the county in 1960 was approximately 62% Negro and 38% white. Based on oral testimony the court assumed the population at the time of trial (March, 1969) to be between 61% and 62% black and between 38% and 39% white.

Under Mississippi law, 2 Miss.Code Ann., §§ 1762, 1766 (Supp.1968), the primary source for jurors must be the county voter registration list. By § 1762-01 the land assessment rolls (of "resident freeholders") may be used as a source also upon the entry of an order by the state circuit judge in whose jurisdiction the county falls. No such order has been entered for Issaquena County.

The Board of Supervisors meet annually in April and must prepare a master jury list of at least 200 persons but not over 800 persons for the coming year, §§ 1766, 1767. From the voter list (and, where used, the assessment rolls) the Board must choose persons of "good intelligence, sound judgment and fair character," §§ 1766, 1762-03. There is no contention that these standards are being applied discriminatorily in Issaquena County.

A copy of the new list is delivered to the Circuit Clerk who is to put the names into the jury box or wheel. When the names are in the wheel it is locked and sealed, § 1766.

For approximately ten years before 1965 no Negroes were qualified to vote in Issaquena County and none were placed on the jury list. In 1966 Negroes began to register in the county, and the Board of Supervisors began the practice of placing on the jury list all, or substantially all, Negro males whose names were on the voting list. In number this was 91 in 1966, or 28% of the names on the jury list, 175 in 1967, or 38% of the names on the jury list, and 302 in April, 1968, or 53% of the names on the jury list.

### 1. The master jury lists

■ As to the claim of racial discrimination in selection of names for the master list: in a county in which the

1. We consider this case together with, and decide it concurrently with, Raiford v. Dillon, 430 F.2d 949, [5th Cir., July 24, 1970], which was tried in the same District Court.

population is 61–62% black and 38–39% white, where the voter list is employed as the sole source of names, where registration of Negro voters has been steadily rising, and where the April, 1968 list was 53% black, we are not able to say that the District Judge erred in refusing injunctive relief. *Cf.* Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed. 2d 759, 766 (1965).[1A] Considering also that all, or substantially all, the Negro males on the voter list were placed on the jury list as they registered as voters, and that this practice continued until the black representation on the April, 1968 list had reached the level discussed above, we are not able to say that the District Judge abused his discretion in declining to grant injunctive relief on the basis of earlier patterns of discriminatory exclusion.

However, on remand the District Judge must make further inquiry into subsequent composition of the jury list, as provided below.

## 2. The venires

Our conclusion as to the composition of jury venires is different. The procedure for placing names in the wheel and selecting venires was described as follows. Each name on the master jury list is put on a slip of paper, and the slips are put in the county jury wheel in different compartments by district of residence. Venires are drawn for August and February terms of court. Through openings in the wheel the sheriff draws one slip from each of the five (district) compartments of the wheel in turn, and each name is recorded, until sufficient names have been drawn. At times District Two, a small district, has been exhausted before the complete venire has been selected. After a term of court the names of those excused or who did not serve or who served on a grand jury with little work were returned to the wheel.

1A. In viewing the disparity between black population, 61–62%, and black representation on the April, 1968 jury list, it should be noted that the race of 2.6%

The make-up of the master jury list, and the venires by districts, for 1966 through February 1969, was as follows:

### 1966 Master Jury List

| District | White | % | Negro | % | Unknown | % | Total |
|---|---|---|---|---|---|---|---|
| One | 49 | 80% | 12 | 20% | - | - | 61 |
| Two | 6 | 60% | 4 | 40% | - | - | 10 |
| Three | 45 | 79% | 12 | 21% | - | - | ·57 |
| Four | 39 | 57% | 29 | 42% | 1 | 1% | 69 |
| Five | 84 | 68% | 34 | 28% | 5 | 4% | 123 |
| Totals | 223 | 70% | 91 | 28% | 6 | 2% | 320 |

### August 1966 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 10 | 83% | 2 | 17% | 12 |
| Two | 2 | 50% | 2 | 50% | 4 |
| Three | 10 | 83% | 2 | 17% | 12 |
| Four | 10 | 83% | 2 | 17% | 12 |
| Five | 20 | 91% | 2 | 9% | 22 |
| Totals | 52 | 84% | 10 | 16% | 62 |

### February 1967 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 12 | 80% | 3 | 20% | 15 |
| Two | 1 | 50% | 1 | 50% | 2 |
| Three | 7 | 70% | 3 | 30% | 10 |
| Four | 11 | 73% | 4 | 27% | 15 |
| Five | 16 | 80% | 4 | 20% | 20 |
| Totals | 47 | 76% | 15 | 24% | 62 |

### 1967 Master Jury List

| District | White | % | Negro | % | Unknown | % | Total |
|---|---|---|---|---|---|---|---|
| One | 56 | 71% | 23 | 29% | - | - | 79 |
| Two | 6 | 40% | 9 | 60% | - | - | 15 |
| Three | 56 | 72% | 21 | 27% | 1 | 1% | 78 |
| Four | 44 | 42% | 61 | 58% | - | - | 105 |
| Five | 121 | 66% | 61 | 33% | 1 | 0.5% | 183 |
| Totals | 283 | 61.5% | 175 | 38% | 2 | 0.5% | 460 |

### August 1967 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 12 | 86% | 2 | 14% | 14 |
| Two | 3 | 50% | 3 | 50% | 6 |
| Three | 14 | 100% | 0 | 0% | 14 |
| Four | 10 | 71% | 4 | 29% | 14 |
| Five | 12 | 86% | 2 | 14% | 14 |
| Totals | 51 | 82% | 11 | 18% | 62 |

### February 1968 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 14 | 100% | 0 | 0% | 14 |
| Two | 1 | 50% | 1 | 50% | 2 |
| Three | 14 | 93% | 1 | 7% | 15 |
| Four | 12 | 86% | 2 | 14% | 14 |
| Five | 15 | 88% | 2 | 12% | 17 |
| Totals | 56 | 90% | 6 | 10% | 62 |

[A 2582]

of the list is shown as unknown. If any of these are Negroes, the disparity narrows.

#### 1968 Master Jury List[2]

| District | White | % | Negro | % | Un-known | % | Total |
|---|---|---|---|---|---|---|---|
| One | 57 | 54.3% | 36 | 34.3% | 12 | 11.4% | 105 |
| Two | 9 | 24% | 28 | 76% | - | - | 37 |
| Three | 52 | 57.2% | 35 | 38.4% | 4 | 4.4% | 91 |
| Four | 44 | 31% | 100 | 69% | - | - | 144 |
| Five | 112 | 47% | 126 | 53% | - | - | 238 |
| Total | 274 | 44.5% | 325 | 52.8% | 16 | 2.6% | 615 |

#### August 1968 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 10 | 83% | 2 | 17% | 12 |
| Two | 3 | 25% | 9 | 75% | 12 |
| Three | 10 | 83% | 2 | 17% | 12 |
| Four | 9 | 75% | 3 | 25% | 12 |
| Five | 12 | 86% | 2 | 14% | 14 |
| Total | 44 | 71% | 18 | 29% | 62 |

#### February 1969 Venire

| District | White | % | Negro | % | Total |
|---|---|---|---|---|---|
| One | 10 | 77% | 3 | 23% | 13 |
| Two | 5 | 42% | 7 | 58% | 12 |
| Three | 12 | 92% | 1 | 8% | 13 |
| Four | 7 | 58% | 5 | 42% | 12 |
| Five | 11 | 92% | 1 | 8% | 12 |
| Total | 45 | 73% | 17 | 27% | 62 |

[A 2583]

These figures require little comment. They speak for themselves. On every one of six successive venires the percentage of Negroes is less than the percentage of Negroes on the master list, and on five of the six it is substantially less. Thus: 1966: names on list, 28% black; names on venires, 16% black and 24% black (this is the only one with a difference that is not striking). 1967: names on list, 38% black; names on venires, 18% black and 10% black. 1968: names on list, 52.8% black; names on venires, 29% black and 27% black.

Examining the venires on a district basis, only four times has the percentage of Negroes on the venire from a district been as great as the percentage of Negroes on the list from that district. All four of the occasions were under the 1966 master list, on which the number of Negroes was so small that a very small number of Negroes on a venire produced a high percentage of the Negroes on the master list from that district. Two of the four instances were from District Two, which was atypical.

We have followed repeatedly the principle that a plaintiff may make out a prima facie case of invalid exclusion of Negroes from jury service by objective results of the jury selection procedure. Preston v. Mandeville, 428 F.2d 1392 [5th Cir. 1970] ; Salary v. Wilson, 415 F.2d 467 (5th Cir. 1969) ; Billingsley v. Clayton, 359 F.2d 13 (5th Cir.) (en banc), cert. denied, 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966) ; United States ex rel. Seals v. Wiman, 304 F.2d 53, 67 (5th Cir. 1962). Once a substantial disparity is seen to exist, the burden is upon the defendant officials to explain it by constitutionally acceptable explanations. Salary v. Wilson, supra, and cases there cited. We perceive no compelling reason for not applying these principles where we are comparing numbers and percentages of Negroes on the venires with numbers and percentages of Negroes on the master list.

The defendant officials have not met the burden of coming forward with affirmative and constitutionally acceptable explanations of the evident disparity. The stark handwriting on the wall of the figures themselves is not erased by testimony that the names are drawn from the wheel at random. "The mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity." Avery v. Georgia, 345 U.S. 559, 564, 73 S.Ct. 891, 894, 97 L.Ed. 1244, 1249 (1953) (concurring opinion of Frankfurter, J.). The explanation that the wheel is over-stuffed with names, making it difficult to draw names except from the topmost slips in each compartment, does not explain the disparity. And, in any event, the Constitution casts upon jury commissioners, as judicial administrators, the affirmative duty to have a constitutionally secure system. It is not enough to say, "What we are doing is not working, but we do not know why."

---

2. This includes females added in July, 1968 of whom 24 were white and 23 black.

### 3. Female representation

Some of the plaintiffs are females. While this action was pending, in 1968, the Mississippi legislature repealed its statute excluding women from jury duty. Immediately the Board added the names of 47 women to the box, 24 white and 23 Negro, comprising 7.5% of the names in the box, although women were then 49% of those on the voting list. We agree with the District Court that the Board was not required to act instanter. But this does not mean that it need not act at all, or not act with dispatch.

The Board may not discriminate against women as a class by selecting from the voter list in a manner which chooses only a nominal or token number from the class and effectually excludes most of that class of eligibles. The question is not whether a state may by statute exclude women from jury service. See the discussion in Bass v. Mississippi, 381 F.2d 692, 696 (5th Cir. 1967). It is whether, when a state allows jury service by women and provides a source for the names of those to be considered for jury service, and that source contains the names of women, those administering the system may discriminate against women as a class by selecting only a token number and excluding the rest. Cf. Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946).

### 4. Relief

Our decision as to the venires and as to exclusion of women requires that we remand to the District Court for further hearing on an up-to-date record. The District Court is directed to require the defendants to supplement the record and bring it up to date to show composition of the master lists subsequent to those already in the record, by race and sex and district, and the same data as to each venire that has been drawn subsequent to those already in the record, and such other data as the District Judge may require. In view of the earlier history of exclusion of Negroes, the District Court is directed to consider the full spectrum of the contentions of racial exclusion, including whether there have been changes in the population data, or recession from the percentages of black representation held in part 1 of this opinion not to have required injunctive relief. In short, the District Judge must take a new, full and searching look into the jury procedures of this county, on a record brought up to date by the defendants, to determine if discrimination—on grounds of either race or sex—exists, and to determine if the officials are performing the affirmative duty placed upon them of assuring a constitutionally adequate system. This embraces as a minimum, looking into the preparation of master lists, the copying of names onto slips, the placing of all slips in the wheel, the use of an adequate wheel, the drawing of names therefrom at random, the safeguarding of the names drawn, and the entry on venire lists of names drawn.

Remanded with directions for further proceedings. Costs are taxed against the defendants.