577 F.2d 329
 Ella PORTER, Bertha Dickerson, Betty Jean Twyman, Katie
Kelly and Maggie Welch Taylor, on behalf of
themselves and all others similarly
situated, Plaintiffs-Appellants,
v.
James F. FREEMAN, Royce Faulkner and Hoyt Strong,
Individually and as members of the Jury
Commissioners of Talladega County,
Alabama, and their successors
in office,
Defendants-Appellees.
 No. 76-2652.
 United States Court of Appeals,
Fifth Circuit.
 July 31, 1978.
 
 Ralph I. Knowles, University, Ala., Laughlin McDonald, Neil Bradley, Atlanta, Ga., Melvin L. Wulf, New York City, for plaintiffs-appellants.
 Ralph D. Gaines, Jr., Talladega, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before BROWN, Chief Judge, THORNBERRY and MORGAN, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 A class of black, female citizens filed suit on August 5, 1974, alleging discrimination on the basis of race and sex in the composition of the jury roll and box in Talladega County, Alabama.[1] At the time of filing, women constituted 53.8% of the county population of an age to serve on a jury, but made up only 33.4% of the names on the jury roll a differential of 20.4 percentage points. By December 1975, when the parties submitted the case to the District Court for decision, the defendant jury commissioners had twice revised the jury roll and box,[2] resulting in a list in which women made up 45% of the names a disparity of 8.8 percentage points. The District Court Judge held that the increased percentage of women on the rolls since the litigation began made it impossible for the plaintiffs to establish a prima facie case of unconstitutional exclusion. The Judge therefore denied the equitable relief sought and entered judgment for the defendants, and the plaintiffs appealed. Because the underrepresentation of women is not yet satisfactorily cured, we reverse and remand.
 
 
 2
 The Alabama jury selection statutes in force when this suit arose required the three-member jury commission to prepare a jury roll and jury box with the names of all qualified nonexempt citizens in the county who are "generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment . . . ."[3] The commission bases the roll and box on a list prepared by the clerk of "every citizen of the county, over twenty-one and under sixty-five years of age . . . ." The Clerk compiles this list by "scanning the voter registration lists, the lists returned to the tax assessor, any city directories, telephone directories, and any and every other source of information from which he may obtain information, and (by visiting) every precinct at least once a year . . . ." Ala.Code, Title 30, § 24. The statutory scheme, which is thoroughly described in Carter v. Jury Comm'n of Greene County, 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, excluded women from juries until 1966. This blanket exclusion was declared unconstitutional in White v. Crook, 1966, N.D.Ala., 251 F.Supp. 401, 408-409 (three-judge court), and Alabama amended its statutes to allow women to serve as jurors and explicitly to require that "their names (be) put on the jury roll and in the jury box without regard to sex."[4]
 
 
 3
 Despite the statutory revisions, women continued to be underrepresented in the jury rolls. When this suit was filed, the Talladega County jury commission had last filled the jury roll and box three months earlier, in May 1974. The roll consisted of 3,612 names, of whom 1,207, or 33.4%, were women, while the percentage of age eligible women in the community stood at 53.8%. Suit was filed on August 5; on August 22, the jury commission met again and placed an additional 1,977 names on the jury roll, including the names of 769 females, or 38.9% of the total. At some time after August 1974, but before the suit was submitted to the District Court in December 1975, the commission deleted 539 names of males from the jury roll and added 539 names of females, resulting in a jury roll of 5,589 names, of which 2,515 are female. As stated above, the proportion of women on the jury rolls has moved during the pendency of litigation from 33.4% to 45%. The disparity between women in the community and these on the jury roll has narrowed from 20.4% to 8.8%.
 
 
 4
 The District Court Judge held that even if the plaintiffs could have established a prima facie case of unconstitutional exclusion on the basis of the disparity existing when the suit was filed which he doubted the affirmative efforts by the defendants to increase the proportion of women on the jury roll "has removed this possibility." We hold that the Judge erred in declining to grant injunctive relief on the basis of earlier patterns of discrimination, and in granting judgment for the defendants.[5]
 
 
 5
 It is clear law that a showing of substantial underrepresentation of a cognizable class can establish a prima facie case of discriminatory selection of jurors. Castaneda v. Partida, 1977, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498; Gibson v. Blair, 5 Cir., 1973, 467 F.2d 842, 844; Black v. Curb, 5 Cir., 1972, 464 F.2d 165; United States v. Butera, 1 Cir., 1971, 420 F.2d 564. A variance of 20.4% between the percentages of female residents in the county and of women on the jury rolls is clearly sufficient to shift to the jury commission the burden of satisfactorily explaining the cause, particularly in a system that is not based on random selections of jurors. See Preston v. Mandeville, 5 Cir., 1970, 428 F.2d 1392.[6] The figures here are approximately as disproportionate as those found to constitute prima facie evidence of discrimination in Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (60%-37%), or Preston v. Mandeville, supra (29.3%-16%).
 
 
 6
 Given the evidence of past discrimination against women in the selection of names for the jury rolls, the defendants had the burden of demonstrating to the District Court that the revisions in the rolls achieved a "high standard of comparability" between the percentages of women in the community and those of the jury list. Broadway v. Culpepper, 5 Cir., 1971,439 F.2d 1253, 1259. The District Court Judge held that the defendants met this burden by the following explanation for the remaining statistical disparity:
 
 
 7
 ' "We do not know why there was not a greater representation of women unless it be that the key men were reluctant to suggest women who were fully engaged in raising their children or managing their households or that women were not as fully represented in telephone directories or lists of club membership from which names were selected." '
 
 
 8
 United States v. DiTommaso, 4 Cir., 1968, 405 F.2d 385, at 391. We hold that the District Court Judge erred in accepting this explanation as a basis for refusing injunctive or declaratory relief and dismissing the suit. The first element of this explanation the reluctance of "key men" to suggest women as jurors because of their likely family responsibilities simply cannot stand. While the Alabama statute provides that women can in individual instances ask to be excused from performing jury duty, Ala.Code, Title 30, § 21, this does not exempt any woman from inclusion on the jury roll.[7] Alabama law expressly provides that women are to be listed on the rolls in the same manner and under the same conditions as men.
 
 
 9
 The second element of the explanation that women are not as fully represented in telephone directories or lists of clubs relied on by the clerk in compiling the jury roll is also insufficient. We find several difficulties with this excuse. The first is the apparent ease with which the defendants were able to locate names of women in their laudable efforts to increase their representation on the jury roll. The second difficulty is that the underrepresentation of women on the sources used for names of jurors would excuse similar underrepresentation on the jury roll only if a neutral selection system were used. E. g., Black v. Curb, 5 Cir., 1970, 422 F.2d 656, at 659. Evidence in the record indicates that such a system was not followed. The Alabama system has been described as one of the "most enlightened . . . in requiring that broadly inclusive community lists be consulted and that all eligible persons be shown on the (jury) rolls." Bokulich v. Jury Commission, N.D.Ala., 1968, 298 F.Supp. 181, 192 (three-judge court), aff'd, 1969, 394 U.S. 97, 89 S.Ct. 767, 22 L.Ed.2d 109, and aff'd sub nom. Carter v. Jury Comm'n of Greene County, 1970, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549. While the issue before us is not whether the jury commissioners have complied with state statutory procedures, we have pointed out before that
 
 
 10
 while state procedures will not necessarily produce a jury roll meeting constitutional standards, and failure to follow state procedures will not necessarily result in an unconstitutional jury roll, an enlightened state procedure, fairly and efficiently administered, will tend to bring about a constitutional result.
 
 
 11
 Preston v. Mandeville, supra, 479 F.2d at 130. The Alabama procedure is intended to produce an overall list of qualified jurors, Title 30, § 18, from which the jury list, composed of every citizen qualified and not exempted, is drawn. However, the size of the jury lists between 3,000 and 4,000 names in a county of over 35,000 registered voters supports the plaintiffs' allegations that Talladega County does not have the overall list of potentially eligible jurors described in § 18.[8] Its jury commission, like the commission in Bokulich and Preston v. Mandeville, supra, "appears to take the existent roll and to add names to it and remove names from it. This approach is the reverse of that contemplated by the state statutes." 479 F.2d at 130. It is at least clear that the jury commission revised the jury list by adding women's names and dropping men's names. "Normally, corrective action (should) take the form, not of picking out supplemental sources, but of eradicating the error in the primary source." Broadway v. Culpepper, supra, 439 F.2d at 1257, citing Preston v. Mandeville, supra ; see also Black v. Curb, supra. We believe that the jury commissioners are unlikely to produce a constitutionally satisfactory list unless they recompile their primary list and fill the rolls through random selection from the revised sources.
 
 
 12
 Since the suit was filed and judgment rendered the Alabama procedure has been somewhat revised. Act No. 594, Ala.Law, 1978, §§ 3, 5. The revisions in the statute, designed to increase the random and neutral aspects of juror selection, are an additional argument for requiring that the lists be recompiled from the beginning.[9]
 
 
 13
 In refusing injunctive relief and in entering judgment for the defendants, the District Court Judge had to find that the defendants were no longer discriminating on the basis of sex in filling the jury rolls, that the effects of past discrimination had been eliminated as far as possible, and that future discrimination was unlikely. We do not believe that a reduction of the statistical disparity to 8.8%, during the pendency of litigation, by measures that leave the list from which juror's names are selected untouched, is sufficient proof to warrant a dismissal of the complaint. Given the past discrimination revealed in the record, the lack of satisfactory explanation for the remaining underrepresentation of women on the jury roll, and the method by which the numbers were reached, the judgment for the defendants approving the amended jury rolls must be reversed. Given the passage of time since the December 1975 revision, and the staleness of the record before us, it is clearly no longer sufficient for the defendants to add and subtract names from the then existing lists. To construct a list for the future the jury commission must start over, using current population figures and sources, and proceed in compliance with the state statute in constructing a new jury list. Given the high standard of comparability demanded by this Circuit as the only effective cure for past discrimination and as the only reliable assurance that future discrimination will not occur,[10] the suit must be remanded to the District Court so that new lists may be constructed to assure that the number of female names more closely approximates the number of women residing in the community.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 [1]
 We consider this case together and decide it concurrently with Berry v. Cooper, 5 Cir., 1978, 577 F.2d 322
 
 
 [2]
 The parties stipulated that the revisions had resulted in a sufficient number of black citizens on the jury rolls to meet constitutional standards, and the District Court agreed that this effectively removed black citizens from the class of plaintiffs. (R. at 103.) No issue of discrimination on the basis of race is presented in this appeal
 
 
 [3]
 The statute prescribes the qualifications for jurors as follows:
 The jury commission shall place on the jury roll and in the jury box the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment; but no person must be selected who is under twenty-one or who is an habitual drunkard, or who, being afflicted with a permanent disease or physical weakness is unfit to discharge the duties of a juror; or cannot read English or who has ever been convicted of any offense involving moral turpitude. If a person cannot read English and has all the other qualifications prescribed herein and is a freeholder or householder his name may be placed on the jury roll and in the jury box. No person over the age of sixty-five years shall be required to serve on a jury or to remain on the panel of jurors unless willing to do so. When any female shall have been summoned for jury duty she shall have the right to appear before the trial judge, and such judge, for good cause shown, shall have the judicial discretion to excuse said person from jury duty. The foregoing provision shall apply in either regular or special venire.
 Ala.Code, Title 30, § 21.
 Section 6 of this 1978 revision provides:
 Qualification for Jurors. (a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
 (1) Is a citizen of the United States and a resident of the county for more than 12 months, over the age of 19 years;
 (2) Is able to read, speak, understand, and follow instructions given by a judge in the English language;
 (3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror;
 (4) Has not lost the right to vote by conviction for any offense involving moral turpitude.
 (b) The jury commission shall determine on the basis of information provided on the jury qualification form, or interviews with the prospective juror or other competent evidence:
 (1) If the prospective juror is qualified. If so, the name or identifying number of the juror shall be placed in the trial court jury box.
 (2) If not, the commission shall notify the prospective juror of its decision and certify the juror's name to the court as disqualified. The juror shall have 10 days within which to appear before the court to review such decision. If the court finds such juror to be qualified, the court shall so certify to the commission. If the juror fails to appear, or the court finds such juror not qualified, the court shall so certify to the commission.
 (c) In any event, the jury commission shall enter on the master list the ultimate determination of the qualification of each juror.
 
 
 [4]
 Ala.Code, Title 30, § 21(1), provides:
 In all counties in this state in which the jury board was established and its duties prescribed by a special or local law or in which the qualification of jurors or the procedure for preparation of the jury rolls and the filling and refilling of jury boxes has been prescribed by local or special law, the names of female citizens of the county, possessing like qualifications to those qualifications prescribed in such laws for male jurors shall be listed and in all things handled and treated in the same manner prescribed for the listing, handling and treating of the names of male citizens of such counties to the end that both men and women shall be subject to jury duty under like conditions; and their names put on the jury roll and in the jury box without regard to sex.
 Section 2 of the 1978 revision provides:
 Prohibition of Discrimination. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.
 
 
 [5]
 We do not believe it necessary to remand for the purpose of allowing the defendants an opportunity to rebut the prima facie case of discrimination since they have already presented their case to the District Court. See submission of case, App. at 51
 
 
 [6]
 In this case, the defendants suggest that they did not realize the disparity until the suit was filed. This suggestion, devoted to showing their good faith, which is not relevant as an explanation or a defense, is one that we find "disingenuous at best." Foster v. Sparks, 5 Cir., 1975, 506 F.2d 805, 809:
 In view of the . . . fundamentality of the principle opposing such discriminatory practices, defendants' suggestion that they did not realize that it was illegal to discriminate against blacks and women in the jury selection process, and that as soon as this lawsuit apprised them of the contrary, they took corrective action which has resulted in constitutional grand and traverse jury lists, is disingenuous at best.
 
 
 [7]
 Indeed, any presumption against women's availability for jury service would run afoul of Taylor v. Louisiana, 1975, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690
 
 
 [8]
 The voter registration list is estimated by plaintiffs to contain over 16,000 female names. Plaintiff's reply brief at 5. If this list was relied on as a primary source, meant to serve as the statutory overall or comprehensive list, the defendants have produced a jury roll that excludes over 13,000 female names from the voters list alone
 
 
 [9]
 Section 1 of the revised act provides:
 Declaration of Policy. It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court and that all qualified citizens have the opportunity in accordance with this act to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.
 The new lists are to be recompiled as follows:
 Section 3, Master List. (a) The jury commission for each county shall compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty, with their addresses and any other necessary identifying information. This list may include all registered voters, persons holding drivers licenses and registering motor vehicles, and may include other lists, such as lists of utility customers and persons listing property for ad valorem taxation, which will include persons whose listing will foster the policy and protect the rights provided in Sections 1 and 2 thereof.
 The list shall avoid duplication of names. The list shall be reviewed and corrected and new names added from time to time but at least every four years.
 (b) Whoever has custody, possession or control of any lists used in compiling the master list shall make the list available to the jury commission for inspection, reproduction and copying at all reasonable times.
 (c) The master list shall be open to the public for inspection at all reasonable times.
 Section 4. Master Jury Box. (a) The name of every person on the master list shall be set forth on a card listing the name or identifying number as a prospective juror, and the cards shall be placed in the master jury box as provided in this section.
 (b) The number of prospective jurors to be placed in the master jury box shall be 1,000 plus one percent of the total number of names on the master list. From time to time additional prospective jurors may be placed in the master jury box as determined by the jury commission or ordered by the circuit court. In July of each even numbered year, the master jury box shall be emptied and refilled as herein prescribed.
 (c) The names or identifying numbers of prospective jurors to be placed in the master jury box shall be selected by the jury commission at random from the master list as follows:
 The total number of names on the master list shall be divided by the number of names to be placed in the master jury box and the whole number next greater than the quotient shall be the "key number," except that the key number shall never be less than two. A "starting number" for making the selection shall then be determined by a random method from the numbers one to the key number, both inclusive. The required number of the names shall then be selected from the master list by taking in order the first name on the master list corresponding to the starting number and then successively the names appearing on the master list at intervals equal to the key number, recommencing if necessary at the start of the list until the required number of names has been selected. Upon recommencing at the start of the list, or if additional names are subsequently to be selected for the master jury box, names previously selected from the master list shall be disregarded in selecting additional names.
 Section 5. Drawings from master jury box and completion of juror qualification forms. (a) From time to time and in a manner prescribed by the circuit court, the jury commission shall publicly draw at random from the master jury box the names or identifying numbers of as many prospective jurors as the court orders. Neither the names drawn nor any list thereof shall be disclosed to any person other than pursuant to this act or specific order of the court. The jury commission shall mail to every prospective juror whose name is drawn from the master jury box a juror qualification form accompanied by instructions to fill out and return the form to the jury commission within 10 days after its receipt.
 (b) The juror qualification form shall be prepared by the Supreme Court of Alabama and shall elicit the name, age and address of the prospective juror, and whether or not the prospective juror:
 (1) Is a citizen of the United States;
 (2) has been a resident of the county for twelve months;
 (3) is able to read, speak, understand and follow instructions given by a judge in the English language;
 (4) has lost the right to vote by conviction for any offense involving moral turpitude.
 (c) The juror qualification form shall contain the prospective juror's declaration that the responses are true to the best of the knowledge of the juror. If the prospective juror is unable to fill out the form, another person may do so for the juror, and shall indicate on the form who filled it out and the reason therefor.
 (d) If there is an omission, ambiguity or error in a returned form, the commission shall again send a form to the prospective juror with instructions to make the necessary additions, clarification or correction and return the form within 10 days of its receipt.
 (e) In the event any prospective juror fails to return a completed juror qualification form as instructed by the commission, the commission shall notify the prospective juror to appear forthwith before the commission to fill out properly the juror qualification form. At the time of the appearance of the juror before the commission, the juror may be required to fill out another form, and may be questioned with regard to the responses to the questions contained on the form and the grounds for excuses or disqualifications. Any information thus acquired shall be noted on the form.
 (f) In the event any prospective juror fails to return a completed juror qualification form as instructed by the commission, or fails to appear before the commission, the name of such prospective juror may be certified to the court to appear and show cause for such failure. If the prospective juror fails to appear pursuant to the court's order, or fails to show good cause for failure to follow instructions of the commission, such prospective juror shall be guilty of criminal contempt of court, and upon conviction shall be punished accordingly.
 (g) Any person who willfully misrepresents a material fact on a juror qualification form for the purpose of securing or avoiding service as a juror shall be guilty of a misdemeanor, and upon conviction therefor, shall be punished accordingly.
 
 
 [10]
 In Ford v. White, 5 Cir., 1970, 430 F.2d 951, we approved the denial of injunctive relief where the remaining disparity between blacks in the population and blacks on the jury list was 8%, only because the defendants used the voter list as the sole source for the names of jurors and had added every newly registered black voter to the jury list. In Preston v. Mandeville, 5 Cir., 1973, 479 F.2d 127, we reversed a judgment approving a revised list because the new lists excluded substantial geographic areas in the county from consideration as sources of jurors; however, the new list increased the percentage of blacks on the roll to approximately 26% to 27% against a percentage of blacks in the jury age population of 28%. The narrowness of the disparity on the revised list in this case is an example of what we expect of defendants found to have discriminatorily selected names for jury lists. In Black v. Curb, 5 Cir., 1970, 422 F.2d 656, we held that the defendants' failure to draw up a master list as required by Alabama law (and district court order) in remedying unconstitutionally composed jury rolls made the remaining disparities unacceptable