Justine S. MANN, Barbara W. Bitter, Willie James Mincey, G. Hewett Joiner, and Robert Ward, for themselves as residents of Bulloch County, Georgia, and as representatives of all others similarly situated, Plaintiffs,

v.

Robert T. COX, Virgil F. McElveen, Reginald Anderson, A. L. Brown, R. Paul Humphrey, and Jack F. Brannen, Individually and as Jury Commissioners of Bulloch County, Georgia; Honorable W. Colbert Hawkins, Individually and as Judge of the Superior Court of the Ogeechee Judicial Circuit; and all the agents, employees and successors in the interest of the foregoing, Defendants.

Civ. A. No. CV674–5.

United States District Court,
S. D. Georgia,
Swainsboro Division.

Sept. 11, 1979.

Laughlin McDonald, Neil Bradley, Atlanta, Ga., for plaintiffs.

William J. Neville, Statesboro, Ga., for defendants.

## ORDER AND OPINION ON INJUNCTIVE AND DECLARATORY RELIEF

ALAIMO, Chief Judge.

### I.

This action was filed in 1974 by several citizens of Bulloch County against the Jury Commissioners, individually and in their official capacity,[1] and against the Judge of the Superior Court of the Ogeechee Circuit who appoints those officials. Declaratory and injunctive relief is sought.

The suit is brought by the plaintiffs both as individuals and as representatives of certain designated classes, including males in Bulloch County who have never been called for jury duty although eligible to serve, women who have not been called although eligible and blacks. It is alleged that there was a systematic pattern and practice of the exclusion of black residents from the grand jury and traverse jury lists, contrary to the Fourteenth Amendment.

The suit is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), and 1988. Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(3) and 2201.

The answer of the defendants filed in 1974 is little more than a general denial of

---

1. The six-year terms of the Commissioners are staggered. The Board's composition at the present time consists of Chairman Taylor and Messrs. Newsom, Nevil, Rushing, Deal and Mrs. Belcher.

the allegations of the complaint. It was stated that the jury list would be revised in 1974 by the Commissioners, and the Court was requested to abide the good faith efforts of the defendants in regard to a revision.

Before this Court is the question of plaintiffs' motion for summary judgment and the extent, if any, declaratory and injunctive relief should be granted plaintiffs and the classes they represent.[2]

## II.

In Bulloch County the proportion of the population is around 30% black and 70% white. It will be helpful to examine the composition of juries at the time the suit was brought and as it compares to what has been accomplished since, based on various reports filed with the Court by defendants over a period of five years.

### (A)

The complaint alleges that prior to the revision of the jury list in 1974, blacks composed less than 10% of all persons on the jury list and that less than 1% was composed of females.

### (B)

#### Traverse Jury

|  | 1974 | % |
|---|---|---|
| White males | 1,071 | 73.4 |
| White females | 167 | 11.4 |
| Black males | 140 | 9.6 |
| Black females | 81 | 5.5 |
| Total | 1,459 | 99.9 |

#### Grand Jury

|  | 1974 | % |
|---|---|---|
| White males | 178 | 83.2 |
| White females | 23 | 10.7 |
| Black males | 10 | 4.7 |
| Black females | 3 | 1.4 |
| Total | 214 | 100.0 |

### (C)

#### Traverse Jury

|  | 1976 | % |
|---|---|---|
| White males | 1,150 | 60.6 |
| White females | 400 | 21.1 |
| Black males | 206 | 10.9 |
| Black females | 140 | 7.4 |
| Total | 1,896 | 100.0 |

#### Grand Jury

|  | 1976 | % |
|---|---|---|
| White males | 238 | 82.3 |
| White females | 30 | 10.3 |
| Black males | 13 | 4.4 |
| Black females | 8 | 2.8 |
| Total | 289 | 99.8 |

### (D)

#### Traverse Jury

|  |  |  | 1978 |
|---|---|---|---|
| Black females | 15% | or | 325 |
| Black males | 14% | or | 214 |
| White females | 21% | or | 464 |
| White males | 50% | or | 1104 |
| Total |  |  | 2207 |

#### Grand Jury

|  |  |  |  |
|---|---|---|---|
| Black females | 18% | or | 64 |
| Black males | 20% | or | 71 |
| White females | 20% | or | 71 |
| White males | 42% | or | 148 |
| Total |  |  | 354 |

In 1978 the grand jury list remained as it was.

### (E)

On July 12, 1979 I wrote to counsel stating that "This case has been around for a long time and it is high time that something be done." I further stated that "The attorney for the Jury Commissioners for Bulloch County, Mr. Neville, is directed within 10 days after receipt of this letter to furnish up-to-date information concerning the composition of the jury list, racially and feminine . . . and the results of the last revised (1978) list."

In response to this communication counsel for the Commissioners furnished the

---

**2.** This Court has never certified any class or classes but from the beginning has treated the case as a proper class action.

above quoted table of changes in the lists in 1978. The attorney for defendants stated:

"It is felt that the substantial progress required by Your Honor has been accomplished; even a casual comparison of present with past members reported by race and sex in the traverse jury will show that, essentially, there has been a 17% *reduction* in the white male component, but *increases* of 35% in the black male and 101% in the black female components, with the per centum of white males remaining unchanged."

### (F)

In reply to the foregoing, counsel for the plaintiffs informed the Court on July 30th last:

"If there be any doubt as to Plaintiffs' position on the acceptability of the jury lists as reported in Defendants' letter of July 19, 1979, let me remove it by stating that Plaintiffs believe the jury lists, if composed as stated, fall woefully short of that required by law in this circuit. There are a number of problems, but discussion of one will suffice.

"The traverse list is fifty percent white male. In a county thirty percent black, fifty percent female, where the jury lists had less than one percent female when suit was filed, to claim that one of every two persons on the list being white male is in compliance with the law cannot be accepted. Moreover, the overrepresentation of white males comes predominantly at the expense of white females. It is apparently the Defendant jury commissioners' position that white females as a group are either the most unqualified or the hardest citizens to locate in the county. To plaintiffs this is not acceptable."

### (G)

Under date of August 3, 1979, the attorney for the jury commissioners of Bulloch County wrote in a letter to this Court (following an informal conversation between myself and Superior Court Judge Hawkins) that a meeting of the Board had been called for August 15, 1979, in respect to further

investigation in attempting to comply with the directions of this Court. Mr. Neville pointed out that they were going to explore the *de facto* jury service of minority groups of that County. He made reference to that part of his letter of July 19th last which stated that blacks and females serve on juries in numbers dramatically higher than the tables forecast because of other jurors being "excused or stricken".

That substantial progress by the Board has been made since 1973 is obvious. Whether it amounts to compliance with the Fourteenth Amendment and the decisions of the Supreme Court of the United States and the Fifth Circuit is a different matter. Do the grand and traverse jury lists in Bulloch County represent a "fair cross-section"?

It is clear that the Commissioners have not and do not want to change the old system completely. It has approached the problem on a piecemeal basis. I cannot say that there has been a begrudging or non-cooperative compliance with the various suggestions of this Court but, generally speaking, changes have not been made without its prodding. For example, this Court took particular exception at one of the several hearings in the case to the fact that only a handful of the faculty and personnel of Georgia Southern College were on the jury list although there were those willing to serve and otherwise eligible to do so. There are now 165 faculty members, personnel and employees of the College on the traverse jury rolls, as follows: white males, 69; white females, 73; black males, 8; black females, 15.

### III.

Under the Georgia law there shall be a board of commissioners composed of six discreet persons, holding their appointment for six years who are appointed by the Judge of the Superior Court. Their terms are staggered. Ga.Code Ann. § 59–101. Under the Act of 1953 (Acts, pp. 284–285) the board of jury commissioners was required to revise the jury list biennially. This was accomplished by selecting from the books of the

tax receiver upright and intelligent citizens to serve as jurors. From that number not more than two-fifths of the whole were selected as grand jurors the most "experienced, intelligent, and upright citizens." The entire number first selected, including those afterward selected as grand jurors, constituted the body of traverse jurors for the county. See Ga.Code Ann. § 59–106. That Act was amended in 1967 by the provision that the commissioners shall compile, maintain and revise a jury list of intelligent and upright citizens of the county to serve as jurors. In composing the list the board was required to select a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voter's list which was used in the last preceding general election.[3] If the list as so composed is not such, it was to be supplemented by the commissioners going out into the county and personally acquainting themselves with other citizens of any significantly identifiable group which may not be fairly represented.

In 1978 the General Assembly enacted a new statute in respect to the compilation and revision of jury lists. See Acts, 1978, pp. 1611, 1612. It added little to the prior law as contained in the 1968 revision (or the 1973 amendment, Acts, pp. 484–485). The only addition this Court finds in the 1978 Act is the requirement that the jury list to be compiled be a representative cross-section of "at least 50% of" the intelligent and upright citizens of the county from the most recently revised official registered voters list. In 1979 the same Act was reenacted without such 50 per cent requirement.

Under a statute enacted in 1953, "Any woman of this State who does not desire to serve upon juries shall notify the jury commissioners of the county in which she resides in writing to that effect, and thereupon the jury commissioners shall not place the name of such woman in the jury box for said county." Ga.Code Ann. § 59–124.

**3.** The voter registration lists rather than the books of the tax receiver was adopted in this State following the decision of the Supreme

In the light of the fact that prior to the revision in 1974 less than one per cent of the whole were women, it appears that the board extended to the female sex what amounted to wholesale exemption from jury duty irrespective of filing any written request to be excused. Following the bringing of the present action in 1974, the number of females on the list was increased by the Board to 248 females and to 140 black males. White males comprised 73.4% of the 1459 traverse jurors and 83% of the grand jury. Three black females and 10 blacks males were grand jurors.

According to the 1970 census, 36% of Bulloch's population is black, and thirty per cent between the ages of 18 and 65 is of that race. Over 50% of the registered voters are women. Before 1974 less than 10% of the list of jurors was black.

In 1975 the statute dealing with the rights of females as citizens was amended in two significant respects. The exemption of women from jury duty was removed. So was the former provision of law that females who do not desire to serve may avoid service by notifying the commissioners to that effect. Ga.Code Ann. § 79–207. "It is the intent of this Act that all women who are qualified for jury duty, and who are not exempt from jury duty under law, shall have the right to and the responsibility of jury duty in accordance with the provisions of Georgia law." Acts 1975, pp. 779, 780.

### IV.

#### (A)

■ The law is clear that a showing of substantial underrepresentation of a cognizable class can establish a *prima facie* case of discriminatory selection of jurors. *Castaneda v. Partida*, 430 U.S 482, 97 S.Ct. 1272, 51 L.Ed.2d 498; *Porter v. Freeman*, 577 F.2d 329, 332 (5th Cir.); *Avery v. Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; *Whitus v. Georgia, supra*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

Court in *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

■ The systematic exclusion of Negroes from jury rolls where blacks constitute a sizeable part of the population is a violation of the equal protection clause. See *Black v. Curb*, 422 F.2d 656; after remand, 464 F.2d 165 (5th Cir.). A material disparity between the size of the black population of Taliaferro County, Georgia, and the composition of the grand jury where the latter fell far beyond any relationship to population was ruled unconstitutional in *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567.

■ Statements by jury commissioners that their selection was made without regard to race or color does not destroy the *prima facie* case of discrimination based on historical statistics. *Brooks v. Beto*, 366 F.2d 1 (5th Cir.), *cert. den.* 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135.

(B)

■ A blanket exclusion of women from jury duty is unconstitutional. *White v. Crook*, 251 F.Supp. 401, 408–409 (N.D., Ala., three judge court).

■ In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, the Supreme Court had before it a Louisiana jury-selection system which did not disqualify women from jury service but permitted them to decline. As a result, only a few females, a number grossly disproportionate to the number of eligible women in the community, were called for jury service. The Supreme Court held that the plaintiff (a male) was deprived of his Sixth and Fourteenth Amendment right to an impartial jury trial by the exclusion of women jurors. In the case of past discrimination against females in the selection of names for the jury rolls, the defendants have the burden of demonstrating that the revisions of the list achieve a "high degree of comparability" between the percentage of women in the community and those on the jury lists. See *Broadway v. Culpepper*, 439 F.2d 1253 (5th Cir.); *Porter v. Freeman, supra*, 577 F.2d at 332. In the latter case the Fifth Circuit said (footnote 7) that while the Alabama statute provides that women in individual instances can ask to be excused from jury duty the action does not exempt any woman from inclusion on the jury roll. It added (footnote 7) that any contrary assumption concerning women's availability for jury service because of any exemption therefrom "would run afoul of *Taylor v. Louisiana*."

■ The repeal in 1975 by the Georgia Legislature of the former exemption as to women as jurors does not end the matter. The results of prior discrimination have not been eliminated. Its vestiges are reflected in the continued failure to achieve any constitutionally acceptable ratio between the voting population of women in the community and the number of females on the jury lists. It has been held that a variance of 20.4% "between the percentages of female residents in the county and of women in the jury rolls is clearly sufficient to shift to the jury commission the burden of satisfactorily explaining the cause, *particularly in a system that is not based on random selections of jurors*." (Italics added). *Preston v. Mandeville*, 428 F.2d 1392.

■ In the instant case there are 924 black and white females on the 1978 grand jury and traverse jury lists out of a total of 2,561 jurors on such rolls, in other words, 36% of the total number of those on the jury lists are women. The number of females on the grand jury list is 135 out of a total number of 354 grand jurors, or 38% thereof. On the traverse jury list are 789 females out of a total number of 2,207 jurors, or 36% of such total. The variance of the number of women on the jury list with respect to the female population approximates 14% based on an estimated population of 50% of women in Bulloch County.

■ Of course, precise proportional representation is unnecessary. A defendant is not entitled to any jury of any particular composition. *Taylor v. Louisiana, supra*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690. But the variances here are not permissible. *Preston v. Mandeville, supra*, at 1393–94.

### V.

I freely concede that I have temporized in this case. There comes a time, however, when patience is a fault rather than a virtue.

In *Porter v. Freeman, supra*, 577 F.2d at 333, the jury commission appeared to have taken the existing roll and added women's names and dropped men's. The Fifth Circuit said that "Normally, corrective action [would] take the form, not of picking out supplemental sources, but of eradicating the error in the primary source." The Court stated that the defendant commissioners "are unlikely to produce a constitutionally satisfactory list unless they recompile their primary list and fill the rolls through random selection from the revised sources."

In *Thompson v. Sheppard*, 490 F.2d 830 (5th Cir.), the Fifth Circuit approved a jury list drawn by the jury commissioners of Daugherty County mechanically and at random from the entire voting list. In *Broadway v. Culpepper, supra*, 439 F.2d 1253, it was pointed out (note 19) that although the Georgia Code permits an initial, deliberate choice of those determined to be "upright and intelligent" so long as the total result meets the fair cross-section standard, much difficulty would be avoided by random selection "from a corrected reliable voter list." The Court added that "[W]e do not at this time pass on or intimate any decision on whether this suggested 'random-exclusion' process may be compelled . . . ."

In Alabama a random selection system was adopted by the Legislature in 1978 (Act No. 594, Ala.Law, 1978, §§ 3, 5). Under it a master list is prepared from various sources, including all registered voters. The jury commission selects the names from the list at random after picking a "starting number." [4]

■ There is no constitutional defect in the existing system of selecting jurors in Georgia. Its failure to produce a fair cross-section of the voter registration list in this case lies not with the legislation but with the execution. The statute permits a considerable degree of subjectivity in deciding what names are to be taken from the voter's registration list. Such selection must be on an objective and not on a subjective basis. In *Broadway v. Culpepper, supra*, the Fifth Circuit thus described the difficulties presented by the statute in that regard:

"The vice becomes more critical where, as in Georgia, the process is one of selecting 'upright and intelligent' persons out of the voter list, not, as under the Federal Act a *random* selection from the voter list, 28 U.S.C.A. § 1863. It is one thing to make this highly individualized selection from a small segment—500 names, 20%—quite another if the whole—2,500 names, 100%—is the starting point. The field is severely narrowed and, in the absence of countervailing proof this enhances both the likelihood that the smaller segment is not truly representative as well as the opportunity for discriminatory application of the subjective qualifications."

Snakes should be killed by striking them in the head, not the tail. The present system must be uprooted and an entirely new start made.

■ This Court directs the Commissioners to install an objective random selection system of jurors which will comprise the new body of traverse and grand jurors.

The random selection system recently adopted in Alabama appears to be a good guide for use in the case of Bulloch County. The legislation enacted in that State does not widely vary from the federal system adopted under the federal Act of 1968. See 28 U.S.C. §§ 1861 *et seq.* The use of same by the Board of Jury Commissioners in Bulloch County will include preparation of a new master list each four years; yearly revision thereof for purposes of deletions and additions; selecting grand jurors from the master list; rejecting jurors whose answer to the qualification form shows conviction or pending charges of a felony; inabili-

---

4. The Alabama statute is set forth in full in footnote 9 of *Porter v. Freeman, supra*, 577 F.2d 333–335.

ty to read, write and understand the English language with a degree of proficiency sufficient to satisfactorily fill out the form; inability to speak the English language; and inability because of mental or physical infirmity to serve on a jury.

This Court realizes that the change over to random selection will involve sending out and examining and analyzing hundreds of answers to the questionnaires—a time-consuming function. For that reason, the defendant Commissioners will have until February 1, 1980, to put the new jury system into operation.

## VI.

■ A matter of justifiable concern is the status of the present grand and traverse juries during the period between now and February 1st. While this Court is granting a permanent injunction against discrimination in jury selection, I do not want it to have any effect on the functioning and work of the grand or traverse jury during the intervening period. The present system is not deficient to a degree that should prevent the temporary use of the existing grand and traverse jury structure in criminal cases until February 1st, 1980, or sooner.

## VII.

I pointed out on page 151 of this Opinion that on August 3rd counsel for the defendant Commissioners informed me that a special meeting of the Board has been called for August 15th, 1979. In the same letter Mr. Neville announces that a study is to be made of the *de facto* service of minority jurors. In reply, I declined to delay the case for the purpose of further investigations on that or other lines but would wait until August 20th or after that date to hand down a decision.

* The foregoing opinion, considered as findings of fact and conclusions of law in accordance with Rule 52, Fed.R.Civ.P., was prepared and completed by the late lamented Judge Alexander A. Lawrence, Senior Judge of this Court, a day or two before his untimely death.

I was not aware in fixing the 20th as the date for a report that the 18th and 19th were Saturday and Sunday. This Court thereupon extended the time through August 22nd and informed counsel that after consideration of any action taken at the Board meeting a decision would be promptly forthcoming.

## VIII.

■ As noted earlier, the Judge of the Superior Court of the Ogeechee Circuit, The Honorable W. Colbert Hawkins, is named as a defendant in the action. This Court cannot find in the record the slightest evidence that he should be a party defendant or that any injunctive relief should be granted as to him. The duties of the judge of the superior court has nothing to do with the selection of jurors. It is the function of the commissioners. The court's powers begin and end with the appointment by him of members of the board, whom he may remove for cause. Ga.Code Ann. § 59–101.

The Jury Commissioners are required to compile, maintain and revise the jury list biennially, or annually if the senior judge of the circuit directs. Ga.Code Ann. § 59–106. There is nothing in the evidence in this case to show that Judge Hawkins appointed the commissioners other than in good faith and without any motive of not obtaining a fairly representative cross section of intelligent and upright citizens of the county.

The action will accordingly be dismissed as to Judge Hawkins.*

## ORDER

A permanent injunction will be entered against the Jury Commissioners in accordance with the rulings herein.

Injunctive relief is denied as to Judge Hawkins and the action dismissed as to him.

After a thorough and painstaking review of the record and file, Judge Lawrence's able opinion, findings and conclusions are adopted as the opinion, findings and conclusions of this Court.